Anthony DEMARCO, Plaintiff,

v.

**LEHMAN BROTHERS INC.**
and Michael E. Stanek,
Defendants.

Stanley Sved, Plaintiff,

v.

Lehman Brothers Inc. and Michael E. Stanek, Defendants.

Frances Gravino, Plaintiff,

v.

Lehman Brothers Inc. and Michael E. Stanek, Defendants.

Nos. 03 Civ. 3470(JSR), 03 Civ. 3705(JSR), 03 Civ. 4511(JSR).

United States District Court, S.D. New York.

March 29, 2004.

Eric J. Belfi, Rabin, Murray & Frank LLP, New York, NY, for Plaintiff.

## MEMORANDUM ORDER

RAKOFF, District Judge.

Plaintiffs in these three now-consolidated class actions represent a class of purchasers who bought stock in a company called RealNetworks, Inc. ("RealNetworks") between July 11, 2000 and July 18, 2001. *See* Consolidated Class Action Complaint ("Complaint") ¶ 1. RealNetworks, which initially went public in November 1997, provides software products and services for Internet media delivery. *Id.* ¶ 2.

One of RealNetworks' investment banks was defendant Lehman Brothers ("Lehman"), which served as co-managing underwriter of RealNetworks' secondary offering of common stock in June 1999. Complaint ¶ 2. Lehman also publishes research analyst reports on selected companies. At all times here relevant, these reports had a five point rating system that reflected how the analyst covering the stock and writing the report believed the stock would perform relative to the market generally, with "1" being the most positive in terms of recommending a purchase. *Id.* ¶ 15.

The Lehman research analyst who covered RealNetworks and whose reports are at issue in the instant case is co-defendant Michael Stanek.[1] Complaint ¶ 1. Stanek issued thirteen research reports on Real-

---

1. By stipulation, Stanek has been dismissed from this case, without prejudice to being reinstated under certain circumstances. *See* Stipulation and Order, October 15, 2003.

Networks during the class period, all of which rated RealNetworks as a "1" and recommended purchase of its stock. Complaint ¶¶ 18–36.

On April 28, 2003, the Securities and Exchange Commission ("SEC") publicly released emails it had gathered as part of its investigation of Lehman's research analyst reports. Complaint ¶ 37. In one of these emails, dated July 18, 2000, Stanek told an institutional investor that "[Real-Networks] has to be short bigtime." *Id.* ¶ 22. The institutional investor replied on July 19, 2000, saying "nice call on [Real-Networks] ... I mean all the upside from crappy ad business ... why aren't people jumping up and down saying this sucked? ? ? ... nice call on your part anyhow." Stanek replied in turn that "we bank these guys so I always have to cut the benefit of the doubt." *Id.* In another email, written in January 2001, Stanek stated that "if it's in my group it's a short." *Id.* ¶ 34.

Shortly following the public disclosure of these emails, the plaintiffs filed these actions, which were then consolidated. The Consolidated Class Action Complaint, filed on September 22, 2003, alleges violations of Section 10b (and Rule 10b–5 promulgated thereunder) and Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and t(a). *See* Complaint ¶¶ 68–79. Specifically, the Complaint alleges that the plaintiff class was fraudulently induced to purchase shares in RealNetworks by Lehman's allegedly inflated ratings and recommendations, and that they suffered substantial losses when the company's true condition became known. *Id.* ¶¶ 18–36.

Lehman moves to dismiss the Complaint on no fewer than five separate grounds. For the reasons stated below, the motion to dismiss is denied in its entirety.

█ *First,* Lehman argues that plaintiffs have failed to satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4(b)(1), with respect to pleading the falsity of the Lehman reports on which plaintiffs allegedly relied. The PSLRA raises the already heightened pleading requirements of Rule 9(b) to a requirement that, in a securities fraud lawsuit, the plaintiff "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1).

The primary statements here alleged to be misleading are the ratings themselves and the accompanying "bullish" analysis. Lehman argues that since the texts of the research reports contain some language skeptical of RealNetworks' value, the public was adequately informed of the risks involved. But the very fact that, notwithstanding the skeptical language, the reports gave RealNetworks the highest possible "buy" rating is tantamount to a statement that the reader of the reports should discount the skeptical language—a materially misleading statement in light of what Stanek actually knew and believed, as indicated by the emails. At the very least, it is a question for the jury. *See Ganino v. Citizens Utils. Co,* 228 F.3d 154, 167 (2d Cir.2000) (truth-on-the-market defense is "intensely fact-specific" and "rarely an appropriate basis for [dismissal]").

Lehman responds that Stanek's two emails, written in July 2000 and January 2001, respectively, are not sufficient to support the pleading that *all* the research reports issued between July 2000 and July 2001 were misleading. But the consistency of Stanek's expression of his secretly

negative views of the stock in July 2000 and January 2001 could support a reasonable inference that this was his view throughout this six-month period and, indeed, throughout the period that he continued to give RealNetworks his very highest rating (*i.e.,* through July, 2001).

 *Second,* Lehman argues that plaintiffs have failed to meet the PSLRA standard for pleading scienter, *i.e.,* "plaintiffs must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.' " *Novak v. Kasaks,* 216 F.3d 300, 311 (2d Cir.2000). But as already indicated with respect to the issue of falsity, *supra,* the stark difference between what Stanek was effectively recommending to readers of his reports, *i.e.,* "buy," and what he was effectively recommending to preferred customers in his emails, *i.e.* "sell," supports a reasonable inference of an intent to mislead and defraud the former. Indeed, falsity and intent here overlap, for effectively the false statement in the reports is "Based on my investigation of the company and the application of my expertise, I honestly believe you should buy" when the truth is "Based on my investigation of the company and the application of my expertise, I honestly believe you should sell." *See Commissioner v. Culbertson,* 337 U.S. 733, 743n, 69 S.Ct. 1210, 93 L.Ed. 1659.12 (1949) ("the state of a man's mind is as much a fact as the state of his digestion") (quoting *Edgington v. Fitzmaurice,* 29 L.R.Ch. Div. 459, 483 (Bowen, L.J.)).[2]

 *Third,* Lehman argues that plaintiffs' claims should be dismissed pursuant

to the "bespeaks caution" doctrine, *see Halperin v. eBanker USA.com, Inc.,* 295 F.3d 352,. 357 (2d Cir.2002), because the reports in question expressed numerous reservations about RealNetworks and. the risks of investing therein. This argument, which considerably overlaps with Lehman's first argument, *supra,* fails because a reasonable fact-finder could conclude that Lehman, in repeatedly and disingenuously giving RealNetworks its highest "buy" rating, was effectively representing that it did not believe the risks involved should deter a prudent investor from purchasing RealNetworks, whereas in fact (according to Stanek's emails taken most favorably to plaintiffs) it actually believed a prudent investor should be selling RealNetworks. In these circumstances, a reasonable juror could conclude that such a strong "buy" .recommendation completely overwhelmed any contrary cautions.

 *Fourth,* Lehman argues that the complaint fails to adequately allege "transaction causation" (as it is called in securities law parlance), or "reliance" (as it is otherwise referred to in the law of fraud). Plaintiffs rely in this respect on the "fraud on the market" doctrine initially propounded in *Basic v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), which holds that where there has been a misrepresentation to the securities marketplace, a rebuttable presumption arises that investors who purchased or sold securities in an efficient market relied upon the misrepresentation, *id.* at 248–49, 108 S.Ct. 978.

Lehman's initial response is to claim the *Basic* presumption is inapplicable to research reports. But as Judge Cote noted

---

**2.** Lehman's further argument at this point, that the theory of Lehman's strategy advanced in the Complaint is self-contradictory, Memorandum in Support of Defendant Lehman Brothers Inc's Motion to Dismiss at 12–13, is hardly convincing. As RealNetworks' sometime investment banker, Lehman had an in-

terest in promoting its stock to the general public, but not at the expense of its most favored customers, i.e., the institutional investors with whom Stanek corresponded by email. In any event, Lehman's argument here is at best a jury argument, not an argument for dismissing the Complaint.

in rejecting a similar argument in *In re Worldcom Inc. Sec. Litig.*, 219 F.R.D. 267, 299–300 (S.D.N.Y.2003), "defendants cite no legal authority to support this remarkable assertion" and for good reason, for it "comports with both common sense and probability to apply the presumption here." This Court agrees, and therefore declines to exempt the research reports here in question—whose very purpose was to advise Lehman's readers to buy stock in a company, RealNetworks, for which Lehman also acted as investment banker, *see* Complaint, ¶ 2—from the reach of the fraud-on-the-market presumption.

■ Lehman argues further, however, that even if the *Basic* presumption applies, it is here rebutted as a matter of law because the market as a whole was aware of the alleged conflicts between Lehman's investment banking and research departments since there was extensive media coverage of such conflicts. Even aside from the fact that these fact-based arguments are not cognizable in the context of this Rule 12(b)(6) motion, they also fail because Lehman has not established that the market knew Stanek was lying when he recommended RealNetworks' stock. Simply establishing the media had reported on some generalized conflicts between investment banking and research departments in a variety of investment banks is not equivalent to market awareness of Stanek's misrepresentations.

■ *Fifth,* Lehman argues that the complaint fails adequately to allege "loss causation" except in a way that renders plaintiffs' claim barred by the appropriate statute of limitations. But this argument confuses two separate elements of plaintiffs' burden, both of which they have met for pleading purposes. One element is "loss causation," which is the securities law equivalent of "proximate cause" in tort law, "meaning that the damages suffered by plaintiff must be a foreseeable conse-

quence of any misrepresentation or material omission." *Emergent Capital Investment Management, LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 197 (2d Cir. 2003).

■ As with its "proximate cause" counterpart, "loss causation" is not free from ambiguity, and some of the cases in the Second Circuit and elsewhere suggest uncertainty as to whether or not it requires proof that the losses suffered by the plaintiffs can be directly attributed to the market's learning the true facts that the previous misrepresentations concealed. *See Suez Equity Investors, L.P. v. Toronto–Dominion Bank*, 250 F.3d 87, 98 n.1 (2d Cir.2001) (discussing "somewhat inconsistent precedents" on loss causation); *In re Initial Public Offering Securities Litigation*, No. 21 MC 92, 2003 WL 23096875, *3 (S.D.N.Y. Dec.31, 2003)(allegations of artificial inflation without more insufficient for loss causation purposes); *Weiss v. Wittcoff*, 966 F.2d 109, 111(2d Cir.1992)(explaining that central question is "was the damage complained of a foreseeable result of the plaintiff's reliance on the fraudulent misrepresentation?"). At this stage of this lawsuit, however, the Court need not resolve this seeming conflict, for assuming *arguendo* that plaintiffs must plead that their losses proximately resulted from the marketplace's reaction to the revelation of the truth that defendant's actionable statements concealed (as contrasted to independent market forces), the Complaint adequately alleges that in or around October, 2000 the market was finally apprised of the negative information concerning RealNetworks that had earlier led Stanek to take a secretly negative view of the stock and that, as the result of those revelations, the stock declined, causing the losses on which plaintiff here sues. *See* Complaint ¶¶ 25–36. This suffices for loss causation under any standard.

Plaintiffs, however, could not bring suit at the point of such disclosures and losses (that is, late 2000) because they had no basis for believing that Stanek had intentionally lied when he issued his prior positive reports, and without evidence of such *scienter* no private action may be brought. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Thus, while the element of loss causation was known to plaintiffs in late 2000, the element of scienter was not. This latter element did not become known to plaintiffs, and even with the exercise of due diligence could not have become known to them, until the SEC disclosed Stanek's emails to the public on April 28, 2003, shortly after which this suit was commenced. Accordingly, the suit is not barred by the statute of limitations. *See Dodds v. Cigna Sec., Inc.,* 12 F.3d 346, 350 (2d Cir.1993).[3]

While Lehman raises other arguments concerning loss causation, the statute of limitations, and still other grounds for dismissal,[4] the Court, after careful consideration, finds that none of these additional grounds is even sufficiently colorable to warrant discussion here.

For the foregoing reasons, the Court denies in its entirety defendant's motion to dismiss.

SO ORDERED.

---

3. For the same reasons, the Court need not reach at this juncture the parties' debate over whether the applicable statute of limitations is one year, or two years, or otherwise, since the suit is timely under any such period.

4. Some of these additional arguments are premised on the assertion that Lehman's research reports cannot be materially distinguished, so far as causation is concerned, from the research reports of certain other entities. However, at the time of oral argument on December 3, 2003, the Court ruled that Exhibits 26 through 38 submitted by the defendant (a collection of research reports published by other investment banks) were not properly considered on a motion to dismiss under Fed.R.Civ.P. 12(b)(6) and would therefore be excluded. *See* transcript, December 3, 2003, at 2. In the absence of this "evidence," the argument is moot.