Alan G. **HEVESI, Comptroller of the State of New York, as Administrative Head of the New York State and Local Retirement Systems and as Trustee of the New York State Common**

Retirement Fund, The Fresno County Employees Retirement Association, The County of Fresno, and HGK Asset Management, Inc., on behalf of purchasers and acquirers of all World-Com, Inc. publicly traded securities during the period beginning April 29, 1999 through and including June 25, 2002, Plaintiffs–Respondents,

v.

CITIGROUP INC., Citigroup Global Markets Inc. f/k/a/ Salomon Smith Barney Inc., and Jack Grubman, Defendants–Petitioners,

ABN Amro, Inc., Banc of America Securities LLC, Blaylock & Partners, L.P., BNP Paribas Securities Corp., Caboto Sim S.P.A. (f/k/a/ Caboto Holding Sim S.P.A.), Chase Securities Inc. LLC (n/k/a/ J.P. Morgan Securities Inc.), Credit Suisse First Boston LLC (f/k/a/ Credit Suisse First Boston Corporation), Deutsche Banc Alex. Brown, Inc. (n/k/a/ Deutsche Bank Securities, Inc.), Fleet Securities, Inc., Goldman, Sachs & Co., J.P. Morgan Chase & Co., Lehman Brothers Inc., Mizuho International PLC, Tokyo–Mitsubishi International PLC, UBS Warburg LLC, Utendahl Capital Partners, L.P., and WestLB AG (f/k/a/ Westdeutsche Landesbank Girozentrale), Underwriter–Related Defendants–Petitioners,

Bernard Ebbers, Scott Sullivan, David Myers, Buford Yates, Jr., James C. Allen, Judith Areen, Carl J. Aycock, Max E. Bobbitt, Francesco Galesi, Clifford Alexander, Stiles A. Kellett, Jr., Gordon S. Macklin, John A. Porter, Bert C. Roberts, Jr., John W. Sidgmore, Lawrence C. Tucker, Arthur Andersen LLP, Defendants.

Nos. 03–8044, 03–8045.

United States Court of Appeals, Second Circuit.

Submitted: Dec. 5, 2003.

Order Filed: Dec. 31, 2003.

Opinion Filed: May 7, 2004.

Jay B. Kasner (Susan L. Saltzstein, Cyrus Amir–Mokri, Steven J. Kolleeny, of counsel), Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, for Underwriter–Related Defendants–Petitioners.

Martin London (Richard A. Rosen, Brad S. Karp, Eric S. Goldstein, Walter Rieman, Marc Falcone, Joyce S. Huang, of counsel), Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, N.Y. (Louis R. Cohen, Robert B. McCaw, Seth P. Waxman, Peter K. Vigeland, of counsel, Wilmer, Cutler & Pickering, New York, NY), for Defendants–Petitioners Citigroup Inc., Citigroup Global Markets Inc. f/k/a Salomon Smith Barney Inc., and Jack Grubman.

Leonard Barrack (Gerald J. Rodos, Jeffrey W. Golan, Mark R. Rosen, Jeffrey A. Barrack, Pearlette V. Toussant, of counsel), Barrack, Rodos & Bacine, Philadelphia, PA, (Max W. Berger, John P. Coffee, Steven B. Singer, C. Chad Johnson, Beata Gocyk–Farber, Jennifer L. Edlind, John Browne, of counsel, Bernstein Litowitz Berger & Grossman LLP, New York, NY) for Plaintiffs–Respondents.

Before: OAKES, CABRANES, and SACK, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge.

These petitions ask us to decide whether two groups of defendants should be permitted, pursuant to Federal Rule of Civil Procedure 23(f), to file an interlocutory appeal from an order of the United States District Court for the Southern District of New York (Denise Cote, *Judge* ) certifying a plaintiff class. One group of defendants—Citigroup, its affiliate Salomon Smith Barney ("SSB"), and SSB research analyst Jack Grubman (collectively, "Citigroup Defendants")—argue that an interlocutory appeal should be permitted because the District Court, for the first time in the class certification context, extended the fraud-on-the-market doctrine of *Basic Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), to opinions expressed by a research analyst. A second group defendants—underwriters of WorldCom, Inc. ("WorldCom") bonds (collectively, the "Underwriters")—argue that an interlocutory appeal should be permitted because, *inter alia,* the District Court certified a class of stockholders and bondholders even though the only class representatives who have standing to bring an action on behalf of the bondholders have not been subjected to the lead plaintiff scrutiny of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u–4 (2000).

On December 31, 2003, we entered an order granting the Citigroup Defendants' petition and denying the Underwriters' petition. This opinion explains that ruling.

## BACKGROUND

The following basic facts are drawn principally from the District Court's Opinion and Order of October 24, 2003. *See In re Worldcom, Inc. Sec. Litig.,* 219 F.R.D. 267 (S.D.N.Y.2003) ("Class Opinion"). Further detail is provided in that opinion and in other opinions of the District Court.

On June 25, 2002, WorldCom issued the first of several announcements that its certified financial results had to be restated. By late July 2002, WorldCom had filed the largest bankruptcy in United States history. *Id.* at 273–74.

On April 30, 2002, even before the restatement announcements, the first securities class action against WorldCom and numerous other defendants had been filed in the United States District Court for the

Southern District of New York. Subsequent securities actions related to WorldCom's collapse were assigned to the Southern District of New York by the Judicial Panel on Multi–District Litigation, and transferred to that District for pre-trial proceedings.[1] By order dated August 15, 2002, the securities class actions in the Southern District were consolidated under the caption *In re Worldcom, Inc. Securities Litigation* ("Securities Litigation"). *See Albert Fadem Trust v. Worldcom, Inc.*, No. 02 Civ. 3288, 2002 WL 31059859, at *1 (S.D.N.Y. Aug 15, 2002). In the same order, the District Court appointed the New York State Common Retirement Fund ("NYSCRF") as lead plaintiff in the Securities Litigation. *Id.* at *3. NYSCRF had purchased WorldCom stock, WorldCom MCI tracking stock, and WorldCom debt securities, and lost over $300 million from those investments. On October 11, 2002, NYSCRF filed a Consolidated Amended Complaint (the "Complaint"). The Complaint added HGK Asset Management, Inc. ("HGK"), the County of Fresno, California ("Fresno"), and the Fresno County Employees Retirement Association ("FCERA") as named plaintiffs in the putative class action. Each of these additional named plaintiffs, unlike NYSCRF, purchased bonds in massive WorldCom bond offerings on May 24, 2000 and May 15, 2001 (the "2000 and 2001 Offerings").

In the Complaint, the plaintiffs asserted claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. § 77a *et seq.*, on behalf of purchasers of WorldCom bonds who relied on registration statements for the 2000 and 2001 Offerings. The plaintiffs also asserted claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78a *et seq.*, on behalf of purchasers of publicly traded securities of WorldCom from April 29, 1999 to June 25, 2002 (the "Class Period"). The Complaint named numerous defendants, including former WorldCom executive officers, WorldCom's former directors, the Underwriters, WorldCom's former accountants, and the Citigroup Defendants.

The Complaint alleges that the Underwriters failed to conduct proper due diligence in connection with the 2000 and 2001 Offerings. The Complaint alleges further that the Citigroup Defendants had a close and self-serving relationship with WorldCom and its executives from which both sides derived substantial benefit. Specifically, plaintiffs allege that WorldCom benefitted from Jack Grubman's relentlessly positive, but materially false, research reports about the company while SSB and Grubman were well remunerated for their support of WorldCom with investment banking business. By Opinion and Order dated May 19, 2003, the defendants' motions to dismiss the claims in the Complaint were largely denied. *See In re WorldCom, Inc. Sec. Litig.*, 294 F.Supp.2d 392 (S.D.N.Y.2003).

On June 4, 2003, NYSCRF and the three additional named plaintiffs moved for certification of a plaintiff class consisting of all persons and entities who purchased or otherwise acquired publicly traded debt or equity securities of WorldCom during the Class Period and who were injured thereby. On October 24, 2003, the District Court granted the class motion, and certified NYSCRF, HGK, Fresno, and FCERA as class representatives.

---

1. WorldCom sought Chapter 11 protection in the Southern District of New York on July 21, 2002. Once WorldCom filed for bankruptcy, the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362, took effect, preventing litigation against WorldCom from going forward. Thus, the actions have proceeded against the numerous defendants besides WorldCom.

On November 12, 2003, the Citigroup Defendants and the Underwriters petitioned this Court for permission to appeal the District Court's order granting class certification. The Citigroup Defendants argued that the District Court erred in applying the "fraud-on-the-market" doctrine of *Basic Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), under which the element of reliance on alleged misrepresentations is presumed, to expressions of opinion by a research analyst. According to the Citigroup Defendants, because reliance must be proved individually if the "fraud-on-the-market" doctrine is not applied, class issues do not predominate, and a class may not be certified under Federal Rule of Civil Procedure 23(b)(3).[2]

The Underwriters offered three separate arguments in support of their petition: First, they contended that the District Court erred when it certified a class that includes bondholders even though NYSCRF, the sole lead plaintiff under the PSLRA, did not purchase any bonds in the 2000 or 2001 Offerings. Second, they asserted that the three additional named plaintiffs are inadequate class representatives because their fee arrangements with counsel do not require them to pay their *pro rata* share of the total litigation costs. Third, they argued that because some of the bondholders asserting claims against the Underwriters with respect to the 2000 Offering purchased their securities more than one year after that offering, these bondholders will bear the burden of proving reliance on the registration statement that accompanied the offering,[3] and class issues do not predominate.

On December 31, 2003, we entered the following order granting the Citigroup Defendants' petition and denying the Underwriters' petition:

> The petition of Citigroup Inc., Citgroup Global Markets Inc. F/K/A/ Salomon Smith Barney Inc., and Jack Grubman for permission to appeal pursuant [to] Federal Rule of Civil Procedure 23(f) is hereby granted. The petition of the underwriter-related defendants for permission to appeal pursuant to Federal Rule of Civil Procedure 23(f) is hereby denied. An opinion explaining this Court's ruling will follow. The Clerk is directed to schedule this appeal on an expedited basis and assign it to a merits panel in the normal course.

This is the opinion to follow.

## DISCUSSION

### A. Rule 23(f)

Federal Rule of Civil Procedure 23(f) provides that:

---

**2.** Federal Rule of Civil Procedure 23(b)(3) provides:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: the court finds that the *questions of law or fact common to the members of the class predominate over any questions affecting only individual members,* and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3) (emphasis added).

**3.** The Securities Act of 1933 requires purchasers to show reliance on a registration statement if they "acquired the security after the issuer has made generally available to its security holders an earning statement covering a period of at least twelve months beginning after the effective date of the registration statement." 15 U.S.C. § 77k(a).

[a] court of appeals may in its discretion permit an appeal from an order of a district court granting or denying class action certification under this rule if application is made to it within ten days after entry of the order. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

Fed.R.Civ.P. 23(f). In applying Rule 23(f), courts of appeals enjoy "unfettered discretion" to grant or deny permission to appeal based on "any consideration that the court of appeals finds persuasive." Fed.R.Civ.P. 23(f), advisory committee's notes.

■ In *In re Sumitomo Copper Litigation*, 262 F.3d 134 (2d Cir.2001), we articulated the following standard for determining when leave to appeal under Rule 23(f) should be granted:

> [P]etitioners seeking leave to appeal pursuant to Rule 23(f) must demonstrate *either* (1) that the certification order will effectively terminate the litigation and there has been a substantial showing that the district court's decision is questionable, *or* (2) that the certification order implicates a legal question about which there is a compelling need for immediate resolution.[4]

*Id.* at 139 (emphases added).

*Sumitomo* involved a class action alleging that various defendants conspired to manipulate the prices of copper futures contracts in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, the Commodity Exchange Act ("CEA"), 7 U.S.C. § 13(a)(2), and New York law. *Id.* at 136. En route to certifying a class consisting of copper futures contract traders injured by the defendants' alleged conspiracy, the district court concluded that the "fraud-on-the-market" doctrine could be used to satisfy the reliance requirement of a common-law fraud claim under New York law. *Id.* at 142. We denied the defendants' petition to appeal that ruling under Rule 23(f). We determined first that, for reasons not relevant here, the petitioners had not made "a substantial showing that the district court's decision to grant certification is questionable." *Id.* at 140. We then determined that the petitioners had not raised a significant legal question that required immediate resolution. *Id.* at 142. Although we recognized that the "uncertainty of the [fraud-on-the-market issue] tips in favor of a grant of interlocutory review," *id.* at 143, we nevertheless denied the petition on the grounds that (1) the defendants had not shown that the district court's ruling could not be fully reviewed after final judgment, *id.* at 142, and (2) "the [fraud-on-the-market] issue [was] insufficiently connected to the district court's certification order," *id.* at 143. The connection between the fraud-on-the-market issue and the certification order was lacking because "[e]ven if the ... defendants were to prevail on the issue, it would not alter the district court's grant of certification with respect to the plaintiffs' RICO and CEA claims, and *arguably* would not [even] alter the district court's grant of certification with respect to the common-law fraud claim." *Id.* (emphasis added and citation omitted).

There are just two published decisions of this Court applying the standard set

---

4. Despite laying out this two-part test, we emphasized in *Sumitomo* that the Rule 23(f) standard is a flexible one that should not be reduced to any bright-line rules. *See In re Sumitomo Copper Litig.*, 262 F.3d 134, 140 (2d Cir.2001) (leaving open the possibility that "a petition failing to satisfy either of the [alternative] requirements may nevertheless be granted where it presents special circumstances that militate in favor of an immediate appeal").

forth in *Sumitomo, see In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 132 n. 3 (2d Cir.2001); *Nat. Asbestos Workers Med. Fund v. Phillip Morris, Inc.,* 270 F.3d 984, 984 (2d Cir. 2001), and no decisions that have applied the standard in anything other than summary fashion. Accordingly, we take this opportunity to explain why, under the framework laid out in *Sumitomo,* we have exercised our broad discretion to grant the Citigroup Defendants' Rule 23(f) petition and to deny the Underwriters' petition.

## B. The Citigroup Petition

 In our view, the Citigroup Defendants' petition falls within the second category of appealable decisions identified in *Sumitomo,* because the certification order "implicates a legal question about which there is a compelling need for immediate resolution." *Sumitomo,* 262 F.3d at 139. That question is whether a district court may certify a class in a suit against a research analyst and his employer, based on the fraud-on-the-market doctrine, without a finding that the analyst's opinions affected the market prices of the relevant securities. The fraud-on-the-market doctrine, as described by the Supreme Court in *Basic v. Levinson,* creates a rebuttable presumption that (1) misrepresentations by an issuer affect the price of securities traded in the open market, and (2) investors rely on the market price of securities as an accurate measure of their intrinsic value. *See Basic,* 485 U.S. at 245–47, 108 S.Ct. 978; *accord, e.g., In re Ames Dep't Stores Inc. Stock Litig.,* 991 F.2d 953, 967 (2d Cir.1993). This presumption, if unrebutted, thus allows plaintiffs to satisfy the element of reliance in securities fraud claims under the 1934 Act. As the District Court explained, the doctrine "arose as a practical response to the difficulties of proving direct reliance in the context of modern securities markets, where imper-

sonal trading rather than a face-to-face transaction is the norm." *Class Opinion,* 219 F.R.D. at 291. Although the fraud-on-the-market doctrine clearly applies to statements made by *issuers,* as in *Basic,* we have never addressed whether it also applies to reports by *analysts.*

"[A] novel legal question will not compel immediate review unless it is of fundamental importance to the development of the law of class actions and it is likely to escape effective review after entry of final judgment." *Sumitomo,* 262 F.3d at 140. Although we did not grant the defendants' Rule 23(f) petition in *Sumitomo,* we suggested in that decision that a district court's extension of the fraud-on-the-market doctrine should, in some circumstances, be reviewed on an interlocutory basis. *See id.* at 142–43 (noting that the uncertainty surrounding whether the "fraud-on-the-market" doctrine could be applied to common-law fraud claims "tips in favor of a grant of interlocutory review"). Similarly, in *West v. Prudential Securities, Inc.,* 282 F.3d 935, 937 (7th Cir.2002), the Seventh Circuit concluded that a district court's application of the fraud-on-the-market doctrine to a stockbroker's statements to his customers "present[ed] a novel and potentially important question of law." *Cf. Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 165 (3d Cir.2001) (granting Rule 23(f) petition where certification decision raised "fundamental questions about what type of private securities claims merit class certification").

The application of the fraud-on-the-market doctrine in a novel context can have a significant effect on the law of class actions because the presumption of reliance created by the doctrine is often essential to class certification in securities suits. Reliance is an element of securities fraud claims under the 1934 Act. *See, e.g., Har-*

*sco Corp. v. Segui*, 91 F.3d 337, 342 (2d Cir.1996). To the extent that members of a plaintiff class of securities purchasers can invoke the *Basic* presumption by alleging fraud on the market, they need not prove individual reliance on alleged misrepresentations by an issuer. By contrast, if plaintiffs are not entitled to the *Basic* presumption because they cannot plead fraud on the market, reliance must be proved separately as to each class member, and common issues may not predominate over individual issues. *See Basic*, 485 U.S. at 242, 108 S.Ct. 978 ("Requiring proof of individualized reliance from each member of the proposed plaintiff class effectively would have prevented respondents from proceeding with a class action [under Fed.R.Civ.P. 23(b)(3) ], since individual issues then would have overwhelmed the common ones.").

Based on the close connection between the *Basic* presumption and the requirement that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," Fed.R.Civ.P. 23(b)(3), the Seventh Circuit in *West* reversed a district court's order certifying a class consisting of all purchasers of Jefferson Savings Bancorp stock during the period when a stockbroker was falsely telling his clients that Jefferson would be acquired. *West*, 282 F.3d at 940. The Court determined first that the *Basic* presumption could not be applied to a stockbroker's statements to his customers because "[t]he district court did not identify any causal link between non-public information and securities prices, let alone show that the link is as strong as the one deemed sufficient (by a bare majority) in *Basic*.... " *Id.* at 938. Having determined that the *Basic* presumption could not be applied in the absence of such a causal link, the Court then concluded that common issues did not predominate and the certification decision could not stand. *See id.* (explaining that "[a] district judge may not duck hard questions [at the certification stage] by observing that each side has some support").

Here, in certifying a class over the Citigroup Defendants' objections, Judge Cote applied the fraud-on-the-market doctrine to an analyst's expression of opinion as opposed to an issuer's statement of fact. In so doing, Judge Cote declined to "wade into th[e] battle of the experts" as to the existence of a causal link between Grubman's analyst reports and movements in the price of WorldCom securities; instead, Judge Cote credited the plaintiffs' allegation that Grubman's statements of opinion changed the prices of WorldCom securities during the Class Period.[5] Class Opinion, 219 F.R.D. at 299–300 & n. 42. Thus, like the district court in *West*, the District Court in the instant case has applied the fraud-on-the-market doctrine in a novel context[6] without identifying a causal link

---

**5.** It would not be precisely accurate to say that Judge Cote simply *accepted* the allegations in the Complaint as true for the purposes of the class certification motion. Rather, she stated that "SSB Defendants have not sufficiently shown that [their expert's] analysis will succeed in rebutting the presumption of reliance such that it is appropriate to conclude that there will be no such presumption at trial and that individual issues will come to predominate over common ones." 219 F.R.D. at 300. Judge Cote also observed, based on Grubman's $20 million per year salary and his research reports that were highly favorable to WorldCom, that "it comports with both common sense and probability to apply the presumption here." *Id.* at 299. However, Judge Cote did not state what standard of proof, if any, the plaintiffs were required to meet at the class certification stage with respect to the *Basic* presumption.

**6.** Although the fraud-on-the-market doctrine has been invoked to reject motions to dismiss complaints brought against research analysts, *see Demarco v. Lehman Bros.*, 309 F.Supp.2d

between the statements at issue and the price of securities.

The Citigroup Defendants contend that the *Basic* presumption may not be extended to analyst research reports without a specific finding by the District Court that the analysts' misrepresentations actually affected the price of securities traded in the open market. In support of this contention, the Citigroup Defendants point out that Federal Rules of Civil Procedure 23(b)(3) requires "findings" by the District Court. *See* Fed.R.Civ.P. 23(b)(3) (allowing an action to be maintained "as a class action" only if "the court *finds* that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members" (emphasis added)). They argue that by extending the *Basic* presumption to opinions expressed by an analyst without any "finding" that the analyst's statements affected market prices, the District Court ignored a crucial distinction between, on the one hand, the uniquely authoritative statements of issuers and, on the other hand, expressions of opinion by analysts. According to the Citigroup Defendants, in light of the direct connection between the *Basic* presumption and the certification criteria in Rule 23(b)(3), the mere allegation that an analyst's statement affected the price of securities traded in the market must be thoroughly tested at the certification stage.

We need not decide what evidentiary showing, if any, the plaintiffs must make at the class certification stage in order to benefit from the *Basic* presumption in an action against research analysts and their employers. For the purposes of this petition, we simply observe that the Citigroup Defendants have offered a substantial legal argument in support of their position.[7] We also note that, like in *West* but unlike in *Sumitomo*, the District Court's extension of the fraud-on-the-market doctrine in the instant case is closely connected to its certification decision, because, in order to recover from the Citigroup Defendants, each class member will have to prove reliance on one or more of Grubman's statements of opinion—either individually or with the benefit of the *Basic* presumption.[8]

631, 636, 2004 WL 602668, at *3 (S.D.N.Y. 2004) (Rakoff, J.) (on a motion to dismiss, declining to exempt analyst reports from the fraud-on-the-market doctrine as a matter of law); *DeMarco v. Robertson Stephens Inc.*, No. 03 Civ. 590, 318 F.Supp.2d 110, 120, 2004 WL 51232, at *7 (S.D.N.Y. Jan.9, 2004) (Lynch, J.) (same); *In re Credit Suisse First Boston Corp. Sec. Litig.*, No. 97 CIV. 4760, 1998 WL 734365, at *8 (S.D.N.Y. Oct.20, 1998) (Koeltl, J.) (same); *In re WRT Energy Sec. Litig.*, No. 96 CIV. 3610, 1997 WL 576023, at *11 (S.D.N.Y. Sept.15, 1997) (Keenan, J.) (same), it has not previously been invoked at the class certification stage. On motions to dismiss, of course, courts are required to assume the truth of well-pleaded allegations, including allegations that an analyst's misrepresentations affected the market price of securities.

7. We note that at least one prominent scholar of federal securities law, Professor Coffee of Columbia Law School, has opined that ana-

lyst opinions should be treated differently from issuer statements. *See* John C. Coffee, Jr., *Security Analyst Litigation*, N.Y.L.J. Sept. 20, 2001, at 5 ("Only in a case where the publication of the [analyst] report clearly moved the market in a measurable fashion would the 'fraud on the market' doctrine seem fairly applicable.").

8. Count IX of the Complaint asserts that SSB and Grubman violated Section 10(b) of the 1934 Act in connection with the material misstatements and omissions contained in the 2000 and 2001 Registration Statements and by conspiring with WorldCom and its CEO Bernard Ebbers to misrepresent WorldCom's financial condition in connection with the 2000 and 2001 Offerings. Count X alleges that SSB and Grubman also violated Section 10(b) in connection with Grubman's analyst reports and his adoption of Ebbers's material misstatements. Finally, Count XI of the Complaint pleads claims under Section 20(a) of

Finally, it is our view that the issue presented in this case is not only novel but also significant, because the application of the fraud-on-the-market doctrine to opinions expressed by research analysts would extend the potentially coercive effect of securities class actions to a new group of corporate and individual defendants—namely, to research analysts and their employers.[9] Based on these considerations, we conclude that the Citigroup Defendants have presented an issue that is "of fundamental importance to the development of the law of class actions," *Sumitomo*, 262 F.3d at 140.

We also conclude that, in the circumstances presented, the District Court's decision to apply the *Basic* presumption at the certification stage "is likely to escape effective review after entry of final judgment." *Id.* As the Seventh Circuit noted in *West*, "very few securities class actions are litigated to conclusion, so review of [a]

novel and important legal issue [concerning the scope of the *Basic* presumption] may be possible only through the Rule 23(f) device." *West*, 282 F.3d at 937. Moreover, numerous courts and scholars have warned that settlements in large class actions can be divorced from the parties' underlying legal positions. *See id.* ("The effect of a class certification in inducing settlement to curtail the risk of large awards provides a powerful reason to take an interlocutory appeal."); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 148 (2d Cir.2001) (Jacobs, J., dissenting) ("One sound basis for granting jurisdiction under Rule 23(f) is ... the circumstance that the class certification 'places inordinate or hydraulic pressure on defendants to settle, avoiding the risk, however small, of potentially ruinous liability.'" (quoting *Newton v. Merrill Lynch*, 259 F.3d 154, 164 (3d Cir.2001)))[10]; *see*

---

the 1934 Act against Citigroup and SSB as controlling persons of Grubman, and Citigroup as a controlling person of SSB and its employees, managers, and directors. *See* Class Opinion, 219 F.R.D. at 278. There is no dispute that, in order to recover from the Citigroup Defendants, the class members will have to prove reliance on Grubman's opinions, either on an individual basis or with the benefit of the *Basic* presumption.

9. Although it is not central to our decision to grant the petition, we note that several courts in the Southern District of New York are currently grappling with the application of the fraud-on-the-market doctrine to analyst reports. *See Demarco v. Lehman Bros.*, 309 F.Supp.2d 631, 636, 2004 WL 602668, at *3 (S.D.N.Y. 2004) (Rakoff, J.) (declining, on a motion to dismiss, to exempt analyst reports from the fraud-on-the-market presumption as a matter of law); *DeMarco v. Robertson Stephens Inc.*, No. 03 Civ. 590, 318 F.Supp.2d at 120, 2004 WL 51232, at *7 (S.D.N.Y. Jan.9, 2004) (Lynch, J.) (same). As noted, these securities actions have not yet progressed beyond motions to dismiss.

10. NYSCRF's reliance on the majority's statement in *In re Visa Check/MasterMoney Anti-*

*trust Litigation*, 280 F.3d 124, 145 (2d Cir. 2001), that "[t]he effect of certification on parties' leverage in settlement negotiations is a fact of life for class action litigants ... [and] cannot defeat an otherwise proper certification," is unfounded. When we decided *Visa Check*, we had *already* granted the plaintiffs' Rule 23(f) petition, and we drew a clear distinction between the Rule 23(f) inquiry and the review on the merits. *See id.* at 145–46 ("Even assuming *arguendo* that we found this to be a 'death knell' case [in which certification would effectively terminate the litigation], under *Sumitomo* that finding would bear only on our decision to grant the interlocutory appeal. Now that we have granted the appeal and found the district court's certification decision to be thorough, accurate, and not an abuse of discretion, the dissent's argument about coercion loses its force."). Further, with respect to the Rule 23(f) inquiry, we specifically noted that "[w]e need not decide whether this is such a 'death knell' certification because the other basis for granting a Rule 23(f) appeal—the existence of legal questions requiring resolution—is present." *Id.* at 145. Thus, in discussing the potentially coercive effect of class actions, we focused solely on the first basis for granting

also *Janet Cooper Alexander,* Do the Merits Matter? A Study of Settlements in Securities Class Actions, *43 Stan. L.Rev. 497 (1991).*

These concerns about the effect of class certification weigh heavily in the instant case, which "arises from the largest corporate fraud and accounting scandal in United States history." (Compl.¶ 1) This is not the run-of-the-mill class action, or even the run-of-the-mill securities class action. As the District Court noted, "WorldCom issued billions of shares and billions of dollars of debt securities during the Class Period, and it is uncontested that tens of thousands of investors are putative class members." Class Opinion, 219 F.R.D. at 280. Reflecting on the large number of parties to this litigation, as well as the staggering amount of money to which the class members could be entitled after final judgment, the District Court observed that "however deep the pockets of the defendants, the losses suffered through the WorldCom debacle are greater." *Id.* at 304. Based on this extraordinary observation, coming from a seasoned district judge who is intimately familiar with the pleadings and the record, it is hard to conceive of many cases that are less likely than the instant case to yield an appealable final judgment. With that in mind, we conclude that the novel question presented in this

case is not only legally significant but also "likely to escape effective review after entry of final judgment." *Sumitomo,* 262 F.3d at 140.

### C. The Underwriters' Petition

In contrast to the Citigroup Defendants' petition, the Underwriters' petition does not present legal questions that meet the criteria for interlocutory review laid out in *Sumitomo.* Accordingly, the Underwriters will have to wait until there is an appealable final judgment before they can challenge the certification order.

■ The Underwriters' first argument is that the class cannot be certified because the additional named plaintiffs have not been subjected to lead plaintiff scrutiny under the PSLRA. That statute requires a district court to appoint a person or persons to serve as lead plaintiff before proceeding with the adjudication of a private suit under the federal securities laws. Two objective factors inform the district court's appointment decision: the plaintiffs' respective financial stakes in the relief sought by the class, and their ability to satisfy the requirements of Rule 23. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).[11] According to the Underwriters, NYSCRF does not meet the typicality requirement of Rule 23(a) [12] because it did not purchase

interlocutory review under Rule 23(f)—*"that the certification order will effectively terminate the litigation* and there has been a substantial showing that the district court's decision is questionable," *Sumitomo* 262 F.3d at 139 (emphasis added). We simply assumed that the alternative requirements for interlocutory appeal were met, including the requirement that the certification order was "likely to escape effective review after entry of final judgment," *Sumitomo,* 262 F.3d at 140.

11. That provision provides in relevant part that "[t]he court shall adopt a presumption that the most adequate [lead] plaintiff in any private action arising under this chapter is

the person or group of persons that ... in the determination of the court, has the largest financial interest in the relief sought by the class; and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).

12. That section provides in relevant part that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if ... (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ...." Fed.R.Civ.P. 23(a)(3).

bonds in either the 2000 or the 2001 offering and therefore lacks standing to sue the petitioners under Sections 11 and 12 of the 1933 Act on behalf of WorldCom bondholders. Moreover, in the Underwriters' view, NYSCRF's deficiencies as a lead plaintiff cannot be cured through the appointment of three named plaintiffs who have not satisfied the rigors of the PSLRA's lead plaintiff scrutiny.

In rejecting these arguments, the District Court determined (1) that the participation of FCERA, Fresno, and HGK as named plaintiffs and proposed class representatives "ensures that the litigation will continue to focus on the claims raised by bondholders, and that there are representatives of the Class with claims typical of purchasers of both types of securities," and (2) that NYSCRF is a suitable lead plaintiff because its claims "are based on misrepresentations in the Registration Statements and on the same core course of conduct at issue in the Sections 11 and 12 claims." *Class Opinion*, 219 F.R.D. at 281. These determinations, which are part and parcel of the District Court's management of the consolidated class action, are not proper subjects for Rule 23(f) review. *Cf.* Fed.R.Civ.P. 23(f), advisory committee's notes (explaining that "[p]ermission [to appeal under Rule 23(f) ] is most likely to be granted when the certification decision turns on a novel or unsettled question *of law* " (emphasis added)).

■ In an attempt to fit their arguments into one of the categories identified in *Sumitomo*, the Underwriters propose that we adopt a *per se* rule that a class may not be certified where a lead plaintiff does not have standing to bring every available claim and none of the named plaintiffs who have standing to bring the additional claims has been vetted under the PSLRA. This *per se* rule has little to recommend it. Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action. Rather, because the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim. *See In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 123 (S.D.N.Y.2002) ("[T]he fact that the lead plaintiff is to be selected in accordance with objective criteria that have nothing to do with the nature of the claims ... strongly suggests the need for named plaintiffs in addition to any lead plaintiff.").[13] In those cases, just as a class representative can establish the requisite typicality under Rule 23 if the defendants "committed the same wrongful acts in the same manner against all members of the class," *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 208

---

**13.** Also, considering that the role of the lead plaintiff is "to empower investors so that they—not their lawyers—exercise primary control over private securities litigation," S.Rep. No. 104–98, at 4 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 683, any requirement that a different lead plaintiff be appointed to bring every single available claim would contravene the main purpose of having a lead plaintiff—namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole. *See In re Initial Pub. Offering Sec.* *Litig.*, 214 F.R.D. at 123 ("The only other possibility—that the court should cobble together a lead plaintiff group that has standing to sue on all possible causes of action—has been rejected repeatedly by courts in this Circuit and undermines the purpose of the PSLRA."); *In re Razorfish, Inc. Sec. Litig.*, 143 F.Supp.2d 304, 308 (S.D.N.Y.2001) ("To allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff." (quoting *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157–58 (S.D.N.Y.1997))).

(S.D.N.Y.1995) (internal quotation marks omitted), so too can lead plaintiffs.

Moreover, the PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class. *See* Class Opinion, 219 F.R.D. at 286 ("Although the lead plaintiff must 'otherwise satisfy the requirements of Rule 23,' nothing in the text of the PSLRA indicates that every named plaintiff who satisfies the requirements of Rule 23 must also satisfy the criteria established under the PSLRA for appointment as lead plaintiff and actually be appointed as a lead plaintiff."); *In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 380–81 (S.D.N.Y.2000) ("The Court believes on reflection that it probably has the power to designate a Class Representative under Rule 23 who is not a Lead Plaintiff, simply because there is nothing in the statute which prevents it."). Based on this silence in the text of the statute, along with the statement in the Conference Report on the PSLRA that "[t]he provisions of the bill relating to the appointment of a lead plaintiff are not intended to affect current law with regard to challenges to the adequacy of the class representative or typicality of the claims among the class," Conf. Rep. No. 104–369, at 34, *reprinted in* 1995 U.S.C.C.A.N. 730, 733, there is no reason to believe that the PSLRA altered the preexisting standard by which class representatives are evaluated under Rule 23.

For all of these reasons, the Underwriters have not made a "substantial showing that the district court's decision" to name HGK, Fresno, and FCERA as class representatives "is questionable." *Sumitomo*, 262 F.3d at 139. They also have not shown that the District Court's decision implicates a "legal question about which there is a compelling need for immediate resolution." *Id.* First, as noted above, the District Court's determination that the addition of three named plaintiffs would help the lead plaintiff represent the interests of the class as a whole was not a legal decision that we review *de novo;* instead, it was a managerial judgment that is entitled to deference. *See* Fed.R.Civ.P. 23(d) (granting broad discretion to district courts to "make appropriate orders" in order to facilitate management of class actions); *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 28 (2d Cir.2003) (Newman, J., concurring) (discussing district courts' broad discretion to adopt procedural innovations in order to facilitate management of class actions). Moreover, even if the Underwriters have managed to contrive a "legal question" by proposing that we announce a *per se* rule against named plaintiffs such as HGK, Fresno, and FCERA, that question is not "of fundamental importance to the development of the law of class actions," *Sumitomo*, 262 F.3d at 140, because, among other things, we perceive no substantial legal argument in support of such a *per se* rule.

█ The other determinations of the District Court challenged by the Underwriters also do not meet the criteria for an interlocutory appeal under Rule 23(f). The Underwriters argue that the three additional named plaintiffs are inadequate class representatives because they have not agreed to assume ultimate responsibility for a portion of the litigation costs incurred in prosecuting this class action, in alleged violation of Disciplinary Rule 5–103 of the New York Lawyer's Code of Professional Responsibility. That Rule provides that an attorney may only advance or guarantee the expenses of litigation "provided the client remains ultimately liable for such expenses." N.Y. Comp.Codes R. & Regs. tit. 22, § 1200.22(b)(1). In rejecting this argument, the District Court noted that, in managing class actions, "strong federal interests require that the repay-

ment of expenses provision in DR 5–103 be disregarded" and that "the underlying goal of DR 5–103—that litigation be controlled by the client, not the attorney—remains fully protected" by the procedures established by Rule 23. Class Opinion, 219 F.R.D. at 284. The Court also found that "[t]here is no indication that the assumption by their attorneys of the financial risk of litigation has diminished NYSCRF's diligence in supervising the lawsuit." *Id.* at 286. We are not well positioned to second-guess these largely managerial decisions of the District Court, and we decline to use Rule 23(f) for that purpose.

■ Finally, the Underwriters argue that, under the 1933 Act, some of the bondholders asserting claims with respect to WorldCom's 2000 Offering will have to show individualized reliance on the registration statement in question, because these plaintiffs purchased their securities "after the issuer . . . made generally available to its security holders an earning statement covering a period of at least twelve months beginning after the effective date of the registration statement." 15 U.S.C. § 77k(a). According to the Underwriters, if some of the plaintiffs will have to prove individual reliance with respect to even one of the bond offerings, common questions do not predominate.

The District Court rejected this argument on several grounds: First, the Court explained that "any 'earning statement' under Section 11 must comply with the governing SEC regulations. It must include, for instance, such 'material information as is necessary to make the required statements, in the light of the circumstances under which they are made, not misleading,' and be prepared 'in accordance with generally accepted accounting principles.'" Class Opinion, 219 F.R.D. at 293 (quoting 17 C.F.R. § 210.4–01(a)). The Court went on to conclude that be-

cause WorldCom admitted that its financial statements for the years 1999 through the first quarter of 2002 grossly overstated the company's income, these statements could not be considered "earning statements" for the purposes of Section 11. *See id.* at 294 ("It would be illogical indeed if any filing—no matter how inaccurate or misleading, and despite its perpetuation of the very misrepresentations at stake in the Section 11 claim—were sufficient to shift the burden to the plaintiffs to establish reliance on the Registration Statement.").

As an alternative basis for rejecting the Underwriters' predominance argument, the District Court concluded that "even if an admittedly flawed WorldCom SEC filing were considered an 'earning statement' for purposes of Section 11 . . ., issues common to the class would continue to predominate." *Id.* The Court concluded first that "[t]he fraud on the market presumption should apply to the plaintiffs' Section 11 claims, just as it does to the Section 10(b) claims." *Id.* The Court then found that, *regardless* of whether the fraud-on-the-market presumption were applied to Section 11 claims, "common questions would [still] predominate." *Id.*

In light of Judge Cote's last determination—namely, that common issues would predominate *even if* some of the plaintiffs could not benefit from the *Basic* presumption with respect to one of the registrations statements at issue, Class Opinion, 219 F.R.D. at 294—we decline to consider the reliance issue presented by the Underwriters on an interlocutory basis. Like the reliance issue presented in *Sumitomo,* the reliance issue presented by the Underwriters in the instant case is "insufficiently connected to the district court's certification order." *Sumitomo,* 262 F.3d at 143. In *Sumitomo,* the reliance issue was insufficiently connected to the certification order because most of the plaintiffs' claims

did not require proof of reliance and, moreover, imposing the burden of proof on plaintiffs "arguably" would not have altered the grant of certification even with respect to the plaintiffs' common law fraud claim. *Id.* Here, the District Court found that common issues would continue to predominate even if some of the plaintiffs need to prove individualized reliance, and that determination is entitled to deference. *See Sumitomo,* 262 F.3d at 139 (noting "our longstanding view that the district court is often in the best position to assess the propriety of the class and has the ability, pursuant to Rule 23(c)(4)(B), to alter or modify the class, create subclasses, and decertify the class whenever warranted"). Accordingly, it is more than "arguable" that imposing the burden of proof on some of the plaintiffs with respect to reliance on the 2000 Offering would not alter the District Court's grant of certification.[14]

## CONCLUSION

For the reasons stated, we exercise our discretion to grant the Citigroup Defendants' petition for leave to appeal the certification order and to deny the Underwriters' petition.

**14.** Because the District Court found that common issues would predominate even if some plaintiffs would not benefit from the *Basic* presumption, we need not address the Underwriters' argument that any earnings statement covering a period of at least twelve months, no matter how inadequate or misleading, is sufficient to shift the burden to prove reliance to the plaintiffs. By the same token, we need not review the District Court's determination that the *Basic* presumption applies to Section 11 claims.