**Anthony V. DEMARCO, for himself
and all others similarly
situated, Plaintiffs,**

v.

**ROBERTSON STEPHENS INC., and
Paul Johnson, Defendants.**

No. 03 Civ. 590(GEL).

United States District Court,
S.D. New York.

Jan. 20, 2005.

Marc I. Gross, Patrick V. Dahlstrom, John Balestriere, Pomerantz, Haudek, Block, Grossman & Gross LLP, New York, New York; Joseph H. Weiss, Jack Zwick, Leigh A. Parker, Weiss & Yourman, New York, New York, Lead Counsel and attorneys for Lead Plaintiffs Lance Huff and Roger Nacouzi.

Andrew J. Frackman, Brendan J. Dowd, O'Melveny & Myers LLP, New York, New York, for defendant Robertson Stephens Inc.

Eric S. Goldstein, Douglas M. Pravda, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, New York, for defendant Paul Johnson.

## OPINION AND ORDER

LYNCH, District Judge.

This case is one of a number of similar cases currently pending in this Court alleg-ing securities fraud based on false and misleading research analyst reports. In an Opinion and Order dated January 8, 2004, this Court denied in part and granted in part defendants' motion to dismiss this action, retaining the claims based on section 10(b) and Rule 10–b(5) against both Robertson Stephens ("RS") and Paul Johnson. *See De-Marco v. Robertson Stephens, Inc.*, 318 F.Supp.2d 110 (S.D.N.Y.2004). Plaintiffs have now moved for class certification pursuant to Federal Rule of Civil Procedure 23, seeking to certify a proposed class of "all persons or entities who purchased the common stock of Corvis Corporation ... during the period from August 22, 2000, through May 25, 2001 [inclusive] (the 'Class Period'), and who sustained damages as a result of such purchases." (P. Mem.1.) Defendants have objected to the certification on the grounds that (i) the proposed class representatives are "inadequate"; (ii) individual proof of reliance will predominate at trial and therefore common questions do not predominate as required by Rule 23(b)(3); and (iii) plaintiffs have failed to justify the class period. For the reasons that follow, the motion for class certification will be granted.

## BACKGROUND

The full factual background underlying plaintiffs' claims may be found in the Court's decision on the motion to dismiss. *DeMarco,* 318 F.Supp.2d at 114–15. In brief, the Complaint alleges that defendants issued false and misleading analyst reports on Corvis Corporation ("Corvis") from August 22, 2000, through April 27, 2001, in order to inflate the market price of Corvis stock, which Johnson and certain RS officers owned through partnerships and other means. The shares owned by defendants were subject to a "lock-up" period, during which the sale of their stock was restricted. Johnson maintained a "buy" rating on Corvis throughout the lock-up period, while privately advising the partnerships to sell their Corvis shares. Both Johnson and the partnerships sold a majority of their shares soon after the lock-up period expired in January 2001, although Johnson continued to rate Corvis a "buy" for several

months afterward. On Sunday, May 27, 2001, the New York Times published an article by Gretchen Morgenson, titled "Buy, They Say. But What Do They Do?; I.P.O. Conflicts Bedevil Analysts," which revealed that Johnson and other RS executives had been selling Corvis while advising the public to buy.

## DISCUSSION

### I. Standard on Class Certification

In order to certify a proposed class, plaintiffs must demonstrate that the class and its proposed representatives meet the requirements of both Rule 23(a) (generally referred to as numerosity, commonality, typicality, and adequacy) and one of the subsections of Rule 23(b). The only subsection of Rule 23(b) applicable here is 23(b)(3), which requires a finding that "common" questions of law or fact "predominate over any questions affecting only individual members," and that a class action is "superior to other methods for the fair and efficient adjudication of the controversy."

█ Plaintiffs suggest in their motion that the allegations of their Complaint must be presumed true for class certification purposes. (P. Mem.2.) Although the standard of proof on class certification is not well-established, it is clear that plaintiffs must meet a higher standard than that which prevails on a motion to dismiss. Plaintiffs initially cite to *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), in which the Supreme Court chastised the lower court for conducting "a preliminary inquiry [in this case, an evidentiary hearing] into the merits of a suit in order to determine whether it may be maintained as a class action." *Id.* However, since *Eisen*, the Supreme Court has clarified that district courts are required to conduct a "rigorous analysis" of the Rule 23 requirements, and that such rigor may require the district court to "probe behind the pleadings before coming to rest on the certification question." *General Telephone Co. v. Falcon*, 457 U.S. 147, 160–161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

Although some circuits have strongly implied that plaintiffs must demonstrate their compliance with Rule 23 by a preponderance of the evidence, *see Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672 (7th Cir.2001); *Gariety v. Grant Thornton LLP*, 368 F.3d 356 (4th Cir.2004), the Second Circuit has sought to balance the teachings of *Eisen* and *General Telephone* by requiring plaintiffs to make "some showing" beyond the complaint, while also cautioning district courts to refrain from considering or resolving the ultimate merits of the claims or weighing the likelihood of plaintiffs' success at some later stage of the litigation. *See Caridad v. Metro–North Commuter Railroad*, 191 F.3d 283, 291–92 (2d Cir.1999) ("A motion for class certification is not an occasion for examination of the merits of the case."); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 134–35 (2d Cir.2001) ("The question for the district court at the class certification stage is whether plaintiffs' ... evidence is sufficient to demonstrate common questions of fact warranting certification of the proposed class, not whether the evidence will ultimately be persuasive."). Lower courts in this Circuit have considered, as part of this showing, "expert opinions, evidence (by document, affidavit, live testimony, or otherwise), or the uncontested allegations of the complaint." *In re Initial Public Offering Sec. Litig.*, 227 F.R.D. 65, 92–93 (S.D.N.Y.2004).

### II. Rule 23(a) Requirements

#### A. Numerosity

To satisfy the numerosity requirement of Rule 23(a), plaintiffs must show that joinder is "impracticable." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993). Numerosity is generally presumed when a class consists of forty or more members. *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995). The defendants do not dispute the numerosity of the proposed class. Plaintiffs have shown that Corvis had millions of outstanding shares in active trading on the NASDAQ market during the class period, and it is uncontested that "hundreds, if not thousands" of investors are within the proposed class. (P. Mem.8.)

### B. Commonality

Rule 23(a) also requires that the action raise an issue of law or fact that is common to the class. *See, e.g., Robinson v. Metro-North Commuter R.R.Co.*, 267 F.3d 147, 155 (2d Cir.2001). Plaintiffs have identified numerous common questions, including the nature and extent of the alleged misrepresentations and omissions regarding Corvis, whether defendants acted with scienter, and whether the alleged misrepresentations damaged investors by inflating the market price of Corvis stock. (P. Mem.10–11.) Defendants do not contest that some common questions of law or fact are raised by the plaintiffs' claims.

### C. Typicality

Rule 23(a)'s typicality requirement is satisfied when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson*, 267 F.3d at 155 (citation omitted); *see also In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir.1992). The factual background of each named plaintiff's claim need not be identical to that of all of the class members, *see In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 94 (S.D.N.Y.1998), so long as the claims arise from the same events, and the legal arguments on liability are the same. *Drexel*, 960 F.2d at 291. When plaintiffs can make this basic showing, typicality is generally satisfied, "irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936–37. Defendants do not expressly dispute that proposed representatives Nacouzi and Beauchamp have claims that are typical of the class, and plaintiffs have demonstrated that those claims are "virtually identical to those of the [class] members . . . [and they] will seek to offer the same evidence to prove their claim and to establish defendants' liability." (P. Mem.12–13.)

### D. Adequacy

■ To determine whether a named plaintiff will be an adequate class representative, courts inquire whether: "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir.2000). A class representative must "possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Here, both *Baffa* factors are satisfied. The named plaintiffs' interests are directly aligned with those of the absent class members: they are purchasers of Corvis equity securities who suffered losses as a result of those investments. (P. Mem. Ex. 5 at 137–38, 150–51, 154–59; Ex. 6 at 156–58, 169–71, 173–74, 192–93; Exs. 7 and 8.) Their attorneys are qualified, experienced, and able to conduct complex securities litigation. Indeed, their chosen counsel have already ably and zealously represented the interests of the class thus far in the litigation.

■ Defendants argue, however, that the proposed class representatives are inadequate (an argument that, at times, they characterize as the representatives being "atypical") because they are each subject to unique defenses as to their credibility, and because Beauchamp is subject to a unique defense on reliance because he is sophisticated and particularly well-informed about telecommunications technology. (D.Mem.24–26.) These arguments do not defeat Nacouzi and Beauchamp's adequacy to represent the class. A review of the transcripts of Nacouzi and Beauchamp's depositions does not support defendants' claim that they deliberately lied under oath about any direct reliance on Johnson's reports, and, furthermore, Beauchamp's relative sophistication and the particulars of his investment strategy do not suffice to render him inadequate or atypical of the class. Courts in this circuit have repeatedly rejected claims that the presence of different types of investors within a plaintiff class can defeat the Rule 23(a) requirements. *See, e.g., WorldCom*, 219 F.R.D. at 281–82. Unique defenses can derail class certification where those defenses "threaten to become the focus of the litigation." *Baffa*, 222 F.3d at 59. The arguments raised by defendants on adequacy are distractions;

they do not "threaten to become the focus of the litigation," and their weakness is demonstrated, in part, by defendants' near-total reliance on caselaw that pre-dates the Supreme Court's decision in *Basic v. Levinson,* which, as fully discussed below, is the focus of the only real dispute over class certification or plaintiffs' eventual burden on the element of reliance.

Accordingly, the Court finds that plaintiffs have satisfied their burden to show that the proposed class and its representatives satisfy the prerequisites of Rule 23(a).

### III. *Predominance of Common Issues on Reliance*

■ Under Rule 23(b)(3), a court may certify a class only where common questions of law and fact predominate over questions that affect only individual class members. The primary issue in dispute on this motion is whether plaintiffs have made an adequate showing that common questions on the element of reliance will predominate over individual issues at trial. In the landmark case of *Basic v. Levinson,* the Supreme Court recognized that "Rule 10b–5's reliance requirement must encompass" the economic realities of modern securities markets, where millions of shares change hands daily and face-to-face transactions are rare. 485 U.S. 224, 243–44, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). The Court acknowledged that, rather than requiring proof of individual direct reliance in a securities fraud action, a district court could properly "apply a rebuttable presumption of reliance, supported in part by the fraud-on-the-market theory," which the Court defined as "the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business. Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements." *Id.* at 241–42, 108 S.Ct. 978 (internal quotation marks omitted).

The presumption thus established is that "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price. Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations, therefore, may be presumed for purposes of a Rule 10b–5 action." *Id.* at 247, 108 S.Ct. 978. Defendants may rebut the presumption of reliance by disputing any of the elements giving rise to the presumption (*e.g.,* that the company's shares traded in an efficient market), or by showing "that the misrepresentation in fact did not lead to a distortion of price or that an individual plaintiff traded or would have traded despite his knowing the statement was false." *Id.* at 248, 108 S.Ct. 978.

In the years since *Basic,* the presumption of reliance for plaintiffs in securities fraud suits has been applied hundreds of times. *See, e.g., In re Ames Dep't Stores Stock Litig.,* 991 F.2d 953, 967 (2d Cir.1993). Plaintiffs assert in their motion for class certification that they intend to rely primarily on the presumption to satisfy their eventual proof on the element of reliance, and that therefore common issues on reliance will predominate over individual issues. (P. Mem.15–20.) The standard cases in which the presumption has been utilized, however, involve misstatements by issuers of securities. The parties hotly dispute whether the *Basic* presumption properly applies to misstatements by analysts.

In support of their argument that the fraud-on-the-market theory applies here, plaintiffs point to the 12.6% rise in the market price of Corvis stock following the publication of a favorable RS report on October 20, 2000 (P. Mem.18); the drop in the price of Corvis stock in the trading day following publication of the Morgenson article revealing the earlier sales of Corvis by Johnson and others while RS maintained a Buy rating on the stock (P. Mem.18–19); the drop in price of Corvis stock in the days prior to the publication of the Morgenson article, when RS employees, including Johnson, first learned of its impending publication (P. Mem.19–20); RS's role as lead underwriter to Corvis, and the attendant influence its pronouncements would have on the market (P. Rep. 4 n. 5); and an expert affidavit attesting to the prevalence in the financial

literature of "robust" empirical results supporting a generally-accepted conclusion that analyst rating changes are "associated with significant stock-price changes" (P. Rep.Ex. B). Plaintiffs argue that they have made an adequate showing that they are entitled to the *Basic* presumption under the fraud-on-the-market theory, and thus merit a finding that common issues will predominate on the element of reliance.

The correctness of this argument is, to say the least, an evolving question in this Court. Under similar circumstances, involving section 10(b) and Rule 10b–5 claims against another research analyst and his investment bank employer over their alleged misrepresentations regarding WorldCom, Judge Cote accepted plaintiffs' argument that applying the fraud-on-the-market theory to analyst statements was consistent with *Basic,* noting that defendants' expert report and other efforts at rebutting plaintiffs' theory simply created factual or evidentiary disputes that applied "equally to the entire class and [do] not demonstrate the existence of individual issues or overcome the predominance of the common issues." *In re WorldCom Inc. Sec. Litig.,* 219 F.R.D. 267, 300 (S.D.N.Y.2003).

Certain *WorldCom* defendants sought leave to file an interlocutory appeal of the class certification decision, and that permission was granted by the Second Circuit in *Hevesi v. Citigroup, Inc.,* 366 F.3d 70 (2d Cir.2004). In permitting the interlocutory appeal, the *Hevesi* court noted that Judge Cote's decision marked the first time that the fraud-on-the-market doctrine had been extended to opinions expressed by a research analyst and that, given the novel legal question and the "substantial legal argument" offered by appellants in support of their position, immediate review was warranted. *Id.* at 79. The *Hevesi* court expressly declined, however, to "decide what evidentiary showing, if any, the plaintiffs must make at the class certification stage in order to benefit from the *Basic* presumption in an action against research analysts and their employers." *Id.* Unfortunately for those courts awaiting guidance on this very question, the parties to the *Hevesi* appeal reached a settlement of their claims before a decision on the merits could be issued.

Following *Hevesi,* in a similar case involving alleged misrepresentations by a research analyst at Lehman Brothers regarding RealNetworks, Inc., Judge Rakoff found that "the fraud-on-the-market doctrine may in certain conditions apply to analyst reports but that the plaintiffs here have failed to adduce evidence adequate to satisfy such conditions for purposes of class certification." *DeMarco v. Lehman Bros.,* 222 F.R.D. 243, 245 (S.D.N.Y. 2004). Judge Rakoff reached this conclusion by starting with the assumption that

there is a qualitative difference between a statement of fact emanating from an issuer and a statement of opinion emanating from a research analyst. A well-developed efficient market can reasonably be presumed to translate the former into an effect on price, whereas no such presumption attaches to the latter.... As a result [of the difference between issuer statements and analyst statements], no automatic impact on the price of a security can be presumed and instead must be proven and measured before the statement can be said to have 'defrauded the market' in any material way that is not simply speculative.... [T]his Court now holds that the 'fraud-on-the-market' doctrine applies in a case premised on a securities analyst's false and fraudulent opinions or recommendations *only* where the plaintiff can make a showing that the analyst's statements materially impacted the market price in a reasonably quantifiable respect. Whatever might need to be alleged to meet this standard at the pleading stage, the Court further holds that to qualify for class certification in a case where, as here, such certification is dependent on invocation of the fraud-on-the-market doctrine, the plaintiff must adduce admissible evidence that facially meets the aforementioned standard, *i.e.,* that makes a *prima facie* showing that the analyst's statements alleged to be false or fraudulent materially and measurably impacted the market price of the security to which the statements relate.

*Id.* at 246–47 (emphasis in original).

In establishing a requirement that plaintiffs make a *prima facie* case for application

of the *Basic* doctrine, Judge Rakoff pointed to the *Hevesi* court's reference "with seeming approval" to *West v. Prudential Securities, Inc.*, 282 F.3d 935, 940 (7th Cir.2002), in which the Seventh Circuit rejected the extension of the *Basic* doctrine to non-public misrepresentations made by a broker to his personal customers. *DeMarco v. Lehman Bros.*, 222 F.R.D. at 247. But Judge Cote's decision in *WorldCom* is not comparable to the decision of the district court in *West* because the former simply applied the holding of *Basic* (as to the effect of material public statements on the functioning of an efficient market) to a slightly different factual context (research analysts rather than issuers). Nothing in the language of *Basic* limits its holding to issuer statements alone. In contrast, the district court in *West extended* the holding of *Basic* to a set of statements that are by definition outside the presumption. *See Basic*, 485 U.S. at 247, 108 S.Ct. 978 ("Because most *publicly* available information is reflected in market price, an investor's reliance on any *public material misrepresentations*, therefore, may be presumed for purposes of a Rule 10b–5 action.") (emphasis added). Since the misrepresentations in *West* were not public, the *Basic* presumption by its own terms had no application.

■ Defendants rely heavily on the reasoning and holding of *DeMarco . v. Lehman Bros.* in support of their argument that class certification should be denied because plaintiffs have not shown that common issues on reliance will predominate over individual ones.[1] (D.Mem.6–21.) Defendants have submitted an expert report by a financial economist, who concluded that neither the Johnson reports nor the Morgenson article had "a material impact on the stock price of Corvis," and also critiqued some of the evidence offered by plaintiffs in support of their motion. (Report of René M. Stulz.) Defendants argue that their presentation, or even simply

their critique of plaintiffs' presentation, means that plaintiffs have failed to make out a *prima facie* showing that Johnson's Corvis reports moved the market, and therefore they are not entitled to rely on the *Basic* presumption of market reliance, and thus will be required to demonstrate individualized direct reliance, which demonstration would swamp any common issues at trial.

The Court declines to adopt a higher standard at class certification for plaintiffs alleging securities fraud by research analysts and their employers. Nothing in the holding of *Basic* or the text of Rule 23 requires it, and such a rule cannot be reconciled with the Second Circuit's clear admonitions in *Caridad* and *Visa Check/MasterMoney* that district courts not undertake to "consider or resolve the merits of the claims of the purported class" at the class certification stage. *Caridad*, 191 F.3d at 293. While a court may consider expert evidence at the class certification stage, the purpose of that consideration is not to evaluate the strength of plaintiffs' case on the merits of their claims, but to determine whether the requirements of Rule 23 have been met. *Visa Check/MasterMoney*, 280 F.3d at 135. As in *Visa Check/MasterMoney* and *Caridad*, the question for the Court is whether plaintiffs' evidence is "sufficient to demonstrate common questions of fact …, not whether the evidence will ultimately be persuasive." *Id.*

Here, plaintiffs have demonstrated that they will be able to make a colorable presentation at summary judgment or trial as to the propriety of applying the fraud-on-the-market theory in this case. Defendants vigorously contest this argument, and the evidence in support of it, but it is clear that both plaintiffs' presentation and defendants' rebuttal will apply equally to the entire plaintiff class, and that the legal and factual issues raised by the controversy will be common

1. Defendants also attempt to reason from the "holding" of *Hevesi*, which they variously characterize as "stand[ing] for the proposition that a plaintiff must make a *prima facie* showing of market impact before invoking the fraud-on-the-market presumption" (D.Mem.1), requiring a showing "that defendants' statements of opinion materially affected the market price" (*Id.*), and necessitating "proof that the defendants' opin-

ions 'moved' the market" (*id.*). Of course, *Hevesi* has only one holding: that the application of the *Basic* presumption to analyst statements at the class certification stage presents "a legal question about which there is a compelling need for immediate resolution." 366 F.3d at 77. That holding merely underscores the unresolved nature of the question, rather than directing the necessary result, as defendants assert.

ones. The elements of the fraud-on-the-market theory will form the core of plaintiffs' presentation to a factfinder on reliance, and that factfinder will conclude either that the class as a whole is entitled to the *Basic* presumption or that it is not.[2] Thus, the existence of this dispute, however heated, does not demonstrate that individual issues will predominate over common ones.

Defendants do not appear to argue that the fraud-on-the-market theory can never, as a matter of law, apply to a public statement by an analyst. Any such argument would be difficult to square with *Basic*, and with common sense. If, as *Basic* holds, the law assumes that "the price of a company's stock is determined by the available material information" in the marketplace, 485 U.S. at 241, 108 S.Ct. 978, and that investors who rely on the market price indirectly rely on the accuracy of information disseminated to the market, the fraud-on-the-market theory must apply to any *material* false information. While not every opinion by every self-proclaimed analyst will be material, the significant role of respected analysts as intermediaries in investors' assessments of value, and the lengths to which some analysts have allegedly gone to disguise their true opinions of stocks they wish to promote, make clear that such opinions will sometimes be material. As is the case in other legal contexts, the materiality of such information to the market is a question of fact.

Rather, the essence of defendants' argument appears to be that plaintiffs' showing on reliance is so weak relative to defendants' showing that plaintiffs could not reasonably hope to prevail on their fraud-on-the-market theory at summary judgment or trial. Plaintiffs' showing is indeed weak, and if their ultimate proof on reliance were limited to what they have put forward on this motion, then plaintiffs may have a slim chance of prevailing on the ultimate merits. But this cannot be the measure of plaintiffs' entitle-

ment to class certification, a question that is properly limited to whether the requirements of Rule 23 have been satisfied. Because, under Rule 23(c)(1), class certification must be decided at an "early practicable time" in the litigation, plaintiffs' required showing at this stage must be less than that required to avoid summary judgment, and, of course, plaintiffs' success at this stage does not guarantee that summary judgment for defendants on plaintiffs' fraud-on-the-market theory (or on some other basis) will not eventually be appropriate.[3]

However, at this stage of the litigation, by presenting a mix of market activity evidence, logical arguments, and statistical studies of the influence of at least some analyst statements, plaintiffs' have made "some showing" of their ability to make a common legal and factual presentation on reliance to an eventual factfinder. That showing is not so grossly deficient that it can be definitively held at this stage that the argument will fail and plaintiffs will be required to prove individual reliance for each class member. *See Caridad*, 191 F.3d at 292 ("Regardless of their ultimate persuasiveness on the issue of liability, the statistical report and anecdotal evidence submitted by the Class Plaintiffs are sufficient to demonstrate common questions of fact.") To require a stronger showing at this stage would conflate the issue of whether common issues will dominate the merits decision with the merits decision itself.

Defendants' repeated references to the Court's duty to make "findings" does not alter this conclusion. Clearly the Court must make findings in order to certify a class, but those findings are expressly defined in the text of Rule 23: first, that plaintiffs satisfy the prerequisites of numerosity, commonality, typicality, and adequacy; and, second, that common issues predominate and a class action is superior to other methods for the fair and efficient adjudication of the contro-

2. No doubt the predominance of this common issue would be clearer if plaintiffs disavowed any future arguments of individualized direct reliance, and agreed to limit their evidence at summary judgment or trial solely to demonstrating indirect reliance through the fraud-on-the-market theory. However, at oral argument on this motion, plaintiffs' counsel declined to waive any future arguments based on individual reliance.

3. If that theory fails after full discovery, of course, plaintiffs will be relegated to individualized proof of reliance, at which time the class would necessarily be de-certified.

versy. The Court finds that the proposed plaintiff class satisfies the Rule 23(a) prerequisites, and that common issues predominate over individual ones, and, considering all the circumstances, a class action is the superior method for the adjudication of plaintiffs' claims. *See, e.g., In re Independent Energy Holdings PLC Sec. Litig.,* 210 F.R.D. 476, 479 (S.D.N.Y.2002) (Class action treatment is "particularly appropriate" for securities fraud claims, and under such circumstances courts should err in favor of certifying a class) (citing *In re Blech Sec. Litig.,* 187 F.R.D. 97, 102 (S.D.N.Y.1999)). No further findings, such as a finding that plaintiffs are likely to prevail on their fraud-on-the-market theory, are required to certify a class.

### IV. *Other Issues*

Finally, in the guise of objections to the definition of the class, defendants also attempt to re-argue issues decided against them on the motion to dismiss, such as the appropriate measure of loss causation and the temporal extent of the alleged fraud. (*See, e.g.,* D. Mem. 21–24.) In support of these arguments, defendants either cite no legal authority whatsoever, or rely on cases resolving securities fraud class actions at the summary judgment stage. *See, e.g.,* D. Sur. 6–7, citing *In re Northern Telecom Ltd. Sec. Litig.,* 116 F.Supp.2d 446 (S.D.N.Y.2000). Whatever else may be required of plaintiffs' class certification motion, it is emphatically not an opportunity for a second round of review, at a higher standard no less, of the substantive merits of plaintiffs' underlying claims. Plaintiffs' claim that RS and Johnson committed securities fraud through a kind of "pump-and-dump" scheme to keep the price of Corvis artificially inflated until they could dispose of their shares survived a motion to dismiss, and those substantive claims may proceed to summary judgment without further review. The only question on this motion is whether they may pursue those claims on behalf of a class of similarly situated persons, or whether they must do so as individuals. That question has now been answered. Defendants may renew their arguments as to loss causation and the temporal extent of the fraud on a motion for summary judgment or at trial.

### CONCLUSION

Plaintiffs have demonstrated that their proposed class and its representatives satisfy the requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3). Accordingly, plaintiffs' motion for class certification is granted. Nacouzi and Beauchamp are appointed as class representatives, and Weiss & Yourman and Pomerantz Haudek Block Grossman & Gross LLP are appointed as co-lead counsel for the class.

SO ORDERED: