06-3225-cv

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Argued: January 30, 2008                    Decided:  September 30, 2008)

Docket No. 06-3225-cv

_____

IN RE: SALOMON ANALYST METROMEDIA LITIGATION

DOUGLAS  MILLOWITZ, on behalf of himself and all others similarly situated,

Plaintiff-Appellee,

v.

CITIGROUP GLOBAL MARKETS, INC., F/K/A SALOMON SMITH BARNEY INC.,  F/K/A SALOMON SMITH BARNEY HOLDINGS INC., CITIGROUP INC., CITICORP USA, INC. AND JACK GRUBMAN,

Defendants-Appellants.

_____

Before: WALKER, CALABRESI, and POOLER, Circuit Judges.

_____

Defendants appeal a June 20, 2006, order and decision of the Southern District of New York (Lynch, J.), certifying the plaintiff class.  See In re Salomon Analyst Metromedia, 236 F.R.D. 208 (S.D.N.Y. 2006).  In this appeal, we address whether plaintiffs alleging securities fraud against research analysts must make a heightened evidentiary showing in order to benefit

1

from the fraud-on-the-market presumption of <u>Basic Inc. v. Levinson</u>, 485 U.S. 224 (1988). We conclude that they do not. However, we vacate the grant of class certification because the district court erred in not permitting defendants to attempt to rebut the presumption prior to class certification.

SAMUEL ISSACHAROFF, New York, NY (Jeffrey J. Angelovich, Bradley E. Beckworth, Susan Whatley, Nix, Patterson & Roach, LLP, Daingerfield, TX; Frederic S. Fox, Donald R. Hall, Christine M. Fox, Kaplan Fox & Kilsheimer, LLP, New York, NY; Sean F. Rommel, Patton, Roberts, McWilliams & Capshaw, LLP, Texarkana, TX; <u>on the brief</u>) <u>for Plaintiff-Appellee</u>.

ROBERT McCAW (Louis R. Cohen, Christopher J. Meade, Wilmer Cutler Pickering Hale and Dorr LLP; Brad S. Karp, Mark F. Pomerantz, Richard A. Rosen, Eric S. Goldstein, Paul, Weiss, Rifkind, Wharton & Garrison LLP, <u>on the brief</u>) New York, NY, <u>for Defendants-Appellants</u>.

_____

<u>Pooler</u>, Circuit Judge:

In this appeal, we address whether plaintiffs alleging securities fraud against research analysts must make a heightened evidentiary showing in order to benefit from the fraud-on-the-market presumption of <u>Basic Inc. v. Levinson</u>, 485 U.S. 224 (1988). In <u>Hevesi v. Citigroup, Inc.</u>, we granted the defendants leave to appeal a class certification order under Federal Rule of Civil Procedure 23(f) in order to resolve the important question of whether the <u>Basic</u> presumption may "be extended to analyst research reports without a specific finding by the District Court that the analysts' misrepresentations actually affected the price of securities traded in the open market." 366 F.3d 70, 79 (2d Cir. 2004). That appeal was never heard on the merits. We now reach these issues.

2

This case concerns allegations that defendants Citicorp USA, Inc., Salomon Smith Barney, Inc. ("SSB"), their ultimate parent, Citigroup, Inc. ("Citigroup"), and SSB research analyst Jack Grubman engaged in a scheme to defraud investors in Metromedia Fiber Network, Inc. ("Metromedia"), in violation of Section 10(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. §§ 78a et seq., and the Securities and Exchange Commission's Rule 10b-5, 17 C.F.R § 240.10b-5, by issuing and disseminating research analyst reports on Metromedia that contained materially false and misleading statements and omissions of material facts. According to the complaint, the purpose of the allegedly false and misleading analyst reports was to attract business from Metromedia for the investment banking division of SSB, which would then increase Grubman's personal compensation.

The district court dismissed many of plaintiffs' claims in an opinion and order dated January 5, 2005. See In re Salomon Analyst Metromedia Litig. ("Salomon Analyst I"), 373 F. Supp. 2d 235 (S.D.N.Y. 2005). The court held, however, that with respect to certain research reports issued between March 8 and July 25, 2001, the complaint pleaded fraud with sufficient particularity to withstand defendants' motion to dismiss under Federal Rules of Civil Procedure 9(b) and 12(b)(6). On June 20, 2006, Judge Gerard E. Lynch certified the class of plaintiffs who purchased Metromedia stock between March 8 and July 25, 2001, under Federal Rule of Civil Procedure 23. See In re Salomon Analyst Metromedia Litig. ("Salomon Analyst II"), 236 F.R.D. 208 (S.D.N.Y. 2006). The decision to certify the class is the sole subject of this appeal.

**BACKGROUND**

I.      **Motion to Dismiss**

We begin with a discussion of the motion to dismiss to provide background for the

3

surviving claims. In the original complaint, plaintiffs proposed a class of purchasers of Metromedia securities between November 25, 1997 and July 25, 2001. The district court dismissed the complaint insofar as it related to the pre-March 8, 2001 reports, because the allegations based on these reports were "insufficient to state a claim for securities fraud." Saloman Analyst I, 373 F. Supp. 2d at 238. Plaintiffs allege that Grubman was an extremely influential research analyst in the telecommunications sector, who could drive up share prices with positive recommendations. Prior to March 8, 2001, Grubman's public reports expressed the view that Metromedia, as a telecom company building fiber-optic infrastructure, was poised for explosive growth. Id. However, Grubman emphasized that the company faced risks and that its success depended in large part on its ability to obtain "additional funding to complete the planned build-out of its network." Id. "In short, plaintiffs plead[ed] no specific facts or allegations, beyond conclusory assertions, that would indicate that Grubman's pre-March 8, 2001, Metromedia reports did not present his actual opinion as to the future prospects and investment quality of Metromedia equity securities." Id.

The district court concluded, however, that the allegations relating to the reports issued between March 8 and July 25, 2001, were sufficient to state a claim for securities fraud. Id. at 240. Specifically, plaintiffs alleged that Grubman's reports during this time period omitted or misstated material facts regarding a credit facility that Citicorp USA was to provide Metromedia. Id. at 239. "Metromedia and Citicorp USA signed a commitment letter for a $350 million credit facility in December 2000; the facility was to be underwritten by Citicorp USA, which committed to providing $75 million of the credit and syndicating the remainder of the facility to other lenders . . . ." Id. "As alleged by plaintiffs, and not seriously contested by defendants, the

4

proposed facility suffered numerous problems and delays over the next seven months . . . ." Id.
However, beginning on March 8, 2001, Grubman's Metromedia reports did not reveal that the credit facility was having trouble, but rather touted that Metromedia had "'obtained a commitment for a fully underwritten credit facility for $350 million from Citicorp USA, Inc., which it expects will fully fund its current business plan.'" Id. (quoting Grubman's March 8, 2001, Analyst Report on Metromedia).

Although the touted credit facility was pledged by the investment banking division of Citicorp, defendants insisted that Grubman had no access to any information suggesting that the plans for the credit facility were deteriorating, because SSB's internal policies created a "Chinese Wall" to shield equity investors from the non-public information held by investment bankers. Id. "However, notwithstanding the many dubious leaps of logic made by plaintiffs," the court determined that the complaint contained "sufficient concrete allegations to support an inference that Grubman breached the 'wall' on numerous occasions, with the apparent knowledge and support of SSB management." Id. at 240.

Although Grubman, as an external analyst, had no free-standing obligation to reveal this information, the court determined that he became obligated to reveal it once he "chose to provide some information about the credit facility . . . ." Id. Thus, "particularly in the context of Grubman's previous emphasis on the importance of funding to the future prospects of . . . Metromedia," plaintiffs adequately pleaded that Grubman's alleged failure to disclose the restrictions and risks related to the credit facility rendered the reports from March 8 to July 25, 2001, "materially misleading and thus actionable under section 10(b) and Rule 10b-5." Id.

5

**II.     Motion for Class Certification**

On May 2, 2005, plaintiffs moved for class certification pursuant to Federal Rule of Civil Procedure 23 with respect to the surviving claims.  On June 20, 2006, Judge Lynch certified a class of plaintiffs who purchased Metromedia equity securities between March 8 and July 25, 2001.  See Salomon Analyst II, 236 F.R.D. at 224.

Class certification is warranted under Rule 23 where the proposed class representative meets the standards of Rule 23(a) – numerosity, commonality, typicality, and adequacy – and the proposed class action meets the requirements of one of the subsections of Rule 23(b).  Fed. R. Civ. P. 23.

The district court concluded that one of plaintiffs' proposed class representatives met the Rule 23(a) requirements.  Salomon Analyst II, 236 F.R.D. at 212-17; see Fed. R. Civ. P. 23(a). This determination is not contested on appeal.

The district court next considered whether the proposed class met the requirements of Rule 23(b).  Plaintiffs' motion for class certification was brought under Rule 23(b)(3), which requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members . . . ."  Fed. R. Civ. P. 23(b)(3) (2006). Drawing on the fact that a basic element of a securities fraud claim is reliance, defendants argued that individual questions will predominate over common questions, in violation of Rule 23(b)(3), with respect to whether each member of the proposed class relied on defendants' alleged misrepresentations.  Salomon Analyst II, 236 F.R.D. at 218.[1]  Plaintiffs responded that reliance

---

[1]  The basic elements of a cause of action for securities fraud under Section 10(b) and Rule 10b-5 are (1) a material misstatement or omission, (2) scienter, (3) a connection with the purchase or sale of a security, (4) reliance, "often referred to in cases involving public securities

by all class members may be presumed under the fraud-on-the-market doctrine of Basic. "[U]nder the fraud-on-the-market doctrine, reliance is presumed when the statements at issue become public. The public information is reflected in the market price of the security. Then it can be assumed that an investor who buys or sells stock at the market price relies upon the statement." Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, 128 S. Ct. 761, 769 (2008) (citing Basic, 485 U.S. at 247). Defendants argued that the presumption does not apply to statements by research analysts.

To resolve this argument, the district court began by considering the evidentiary standards that govern the adjudication of a motion for class certification. In a discussion that we have justly characterized as "a valiant effort by a conscientious district judge to reconcile the conflicting messages from our Court on class certification standards," In re Initial Public Offering Sec. Litig. ("In re IPO"), 471 F.3d 24, 40 n.11 (2d Cir. 2006), Judge Lynch first concluded that plaintiffs must make only "some showing" that the predominance requirement is met, based on our decision in Caridad v. Metro-North Commuter Railroad, 191 F.3d 283, 292 (2d Cir. 1999). See Salomon Analyst II, 236 F.R.D. at 221.

Turning to Basic, Judge Lynch ruled that the Basic presumption can apply in a case against research analysts, and noted that "'[n]othing in the language of Basic limits its holding to issuer statements alone.'" Id. at 220 (quoting DeMarco v. Robertson Stephens Inc., 228 F.R.D. 468, 474 (S.D.N.Y. 2005) (Lynch, J.)). Further, Judge Lynch held that there is no reason "'to adopt a higher standard at class certification for plaintiffs alleging securities fraud by research

---

markets (fraud-on-the-market cases) as 'transaction causation,'" (5) economic loss, and (6) "loss causation, i.e., a causal connection between the material misrepresentation and the loss." Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341 (2005) (emphasis omitted).

7

analysts. . . .'" Id. (quoting Robertson Stephens Inc., 228 F.R.D. at 474).

Judge Lynch stated that for the Basic presumption to apply, plaintiffs must demonstrate three elements: (1) the "stock was actively traded on an open, developed, and generally efficient market"; (2) "the alleged misrepresentations were publicly made"; and (3) the misrepresentations were "material." Salomon Analyst II, 236 F. Supp. 2d at 222. Judge Lynch concluded that there could be "no dispute" that the first two elements were met. Id. He found the question of materiality more complicated, but concluded that the misrepresentations were material because plaintiffs had shown a "'substantial likelihood' that the alleged omission of truthful information about the credit facility in defendants' reports 'would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.'" Id. (quoting Harkavy v. Apparel Indus., Inc., 571 F.2d 737, 741 (2d Cir. 1978)). In support of this conclusion, Judge Lynch noted that defendants had not seriously contested that a reasonable investor would have viewed the omitted information as significant, which he found not surprising in light of the evidence that Grubman had publicly emphasized the importance of the credit facility to Metromedia in previous reports. Id. at 222-23.

Defendants' primary argument against applying the Basic presumption was that plaintiffs were required to show that the misrepresentations had an actual causal effect on the market price of Metromedia shares. Id. at 223. Judge Lynch rejected this argument and held that materiality requires only a showing that the omitted information would have been viewed by the reasonable investor as having significantly altered the total mix of information available. Id. at 222. For these reasons, Judge Lynch concluded that plaintiffs were entitled to the Basic presumption. Id. at 222-23.

8

The final issue raised by the class certification motion was whether defendants would be afforded an opportunity to rebut the Basic presumption prior to class certification. Id. at 223. Judge Lynch observed that the Rule 23(b)(3) inquiry was effectively identical to several merits issues, most notably, whether plaintiffs could establish the reliance element of their securities fraud claim. Id. at 221, 223. Relying on Caridad, which suggested that a district judge should not evaluate evidence at class certification when the issue overlaps with an issue on the merits, Judge Lynch held that defendants would not be permitted to present rebuttal evidence until a later stage of the litigation, when it is appropriate to weigh merits-related evidence. Id. at 223 (citing Caridad, 191 F.3d at 293). Judge Lynch noted that defendants had not presented any evidence rebutting plaintiffs' claims that the misrepresentations had an actual effect on the market price. Id. at 223 n.12. Although Judge Lynch "seriously doubt[ed]" that defendants could prevail on this argument, he did not foreclose the possibility. Id.

After concluding that the "'class action is superior to other available methods for the fair and efficient adjudication of the controversy,'" Judge Lynch certified the class. Id. at 224 (quoting Fed. R. Civ. P. 23(b)(3) (2006)).[2]

Defendants sought leave for an interlocutory appeal of the class certification, under Rule 23(f). We granted leave to appeal on October 6, 2006, but ordered briefing to be held in abeyance until we issued a decision in In re IPO. On appeal, defendants first argue that the Basic presumption should be limited to suits alleging misrepresentations by issuers of securities, and not be made available in suits against research analysts. In the alternative, defendants argue that

---

[2] Defendants do not appeal Judge Lynch's determination that the class action vehicle is superior to other methods of adjudicating the controversy.

in suits against research analysts, plaintiffs should be required to make a heightened showing that misrepresentations had an actual impact on market price in order to warrant the Basic presumption.[3] Finally, defendants argue that in light of In re IPO, which rejected several of the evidentiary standards adopted by Judge Lynch, the certification must be vacated.

**DISCUSSION**

**I.**     **Standard of Review and Class Certification Requirements**

In reviewing a district court's decision regarding class certification, we generally apply the abuse of discretion standard. Heerwagen v. Clear Channel Commc'ns, 435 F.3d 219, 225 (2d Cir. 2006). When reviewing a grant of class certification, we accord the district court noticeably more deference than when we review a denial of class certification. Id. To the extent that a ruling on a Rule 23 requirement is supported by a finding of fact, that finding is reviewed under the "clearly erroneous" standard; to the extent the ruling involves an issue of law, such as the allocation of the burden of proof, our review is de novo; and to the extent the ruling involves an application of law to fact, our review is for abuse of discretion. In re IPO, 471 F.3d at 40-41. Thus, as an application of law to fact, we apply the abuse of discretion standard both to the district judge's ultimate conclusion on the class certification motion and to the judge's subsidiary rulings that each of the Rule 23 requirements have been met. Id.

The only question raised by this appeal is whether the district court properly determined that the Rule 23(b)(3) predominance requirement was met. The Rule 23(b)(3) predominance requirement tests whether a proposed class is "sufficiently cohesive to warrant adjudication by

---

[3] Plaintiffs ask that we dismiss the appeal as improvidently granted. Because this case presents several issues of first impression, as identified in Hevesi, we decline to do so. 366 F.3d at 79.

representation." Heerwagen, 435 F.3d at 226 (quotation marks omitted). To meet the requirement, "a plaintiff must show that those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof." Id. In this case, the question of whether the predominance requirement is met largely turns on whether and how the Basic fraud-on-the-market presumption applies to suits against research analysts.

We first address whether we should adopt a bright-line rule that bars application of the Basic presumption to a suit alleging misrepresentations by research analysts. Concluding that we should not, we next consider whether plaintiffs must make a heightened showing in a suit against research analysts to warrant the presumption. Concluding that they need not, we next consider whether remand is required to provide defendants the opportunity to rebut the presumption prior to class certification. We conclude that it is.

## II. Application of the Fraud-on-the-Market Presumption to Suits against Research Analysts

In Basic, the Supreme Court reaffirmed "that reliance is an element of a Rule 10b-5 cause of action. Reliance provides the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury." 485 U.S. at 243 (citation omitted). The Court stressed, however, that there is "more than one way to demonstrate the causal connection." Id. The Court noted that, given the "millions of shares changing hands daily," in modern securities markets, "our understanding of Rule 10b-5's reliance requirement must" evolve beyond the traditional concept of individualized reliance that was appropriate to "the face-to-face transactions contemplated by early fraud cases . . . ." Id. at 243-44. Looking to the legislative history of the 1934 Securities Act, the Court determined that "Congress' premise" in drafting the Act was that "the market price of shares traded on well-developed markets reflects all publicly

11

available information, and, hence, <u>any material</u> misrepresentations." <u>Id.</u> at 246 (emphases added). Therefore, in an efficient market, "an investor's reliance on <u>any</u> public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action." <u>Id.</u> at 247 (emphasis added).

The <u>Basic</u> Court thereby set forth a test of general applicability that where a defendant has (1) publicly made (2) a material misrepresentation (3) about stock traded on an impersonal, well-developed (i.e., efficient) market, investors' reliance on those misrepresentations may be presumed. <u>Id.</u> at 248 n.27. This is all that is needed to warrant the presumption.[4]

Defendants argue that the <u>Basic</u> presumption should be limited to suits involving misrepresentations made by issuers, because misrepresentations by third parties are less likely to materially effect market prices. But they cite no case, and we have found none, that supports such a rule. Moreover, the <u>Basic</u> Court did not so limit its holding and its logic counsels against doing so. The reason is simple: the premise of <u>Basic</u> is that, in an efficient market, share prices reflect "<u>all</u> publicly available information, and, hence, <u>any</u> material misrepresentations." <u>Id.</u> at 246 (emphases added). It thus does not matter, for purposes of establishing entitlement to the presumption, whether the misinformation was transmitted by an issuer, an analyst, or anyone else.[5]

_____

[4] <u>Basic</u> also requires that the plaintiff "traded the shares between the time the misrepresentations were made and the time the truth was revealed." 485 U.S. at 248 n.27. Here, Judge Lynch ruled that the class was limited to purchasers of Metromedia securities between March 8, 2001, the time of the first alleged misrepresentation, and July 25, 2001, the date the alleged misrepresentation was corrected. <u>Salomon Analyst II</u>, 236 F.R.D. at 211, 224.

[5] The Court's holding in <u>Basic</u> is based on its review of the statutory language and legislative history. 485 U.S. at 246. Defendants argue that the "theory underlying <u>Basic</u> has been sharply questioned" by academics, but they point to no statute or precedent contrary to <u>Basic</u>.

12

The Supreme Court's recent decision in <u>Stoneridge Investment Partners, LLC</u> supports this result. In <u>Stoneridge Investment Partners, LLC</u>, the Court held that there is a private right of action under Section 10(b) against entities other than issuers, provided that their conduct "satisf[ies] each of the elements or preconditions for liability . . . ." 128 S. Ct. at 769. Significantly, the Court applied the same <u>Basic</u> test to the conduct of non-issuers to determine whether the fraud-on-the-market presumption applied. <u>Id.</u> The Court concluded the presumption did not apply, not because the defendants were not issuers, but rather, because their "deceptive acts were not communicated to the public," as required by <u>Basic</u>. <u>Id.</u>

Thus, in short, there is no reason in law or logic to apply a bright-line rule prohibiting the application of the <u>Basic</u> presumption in suits against secondary actors such as research analysts.[6]

## III.    Legal Standard for Establishing the Fraud-on-the-Market Presumption

Defendants next argue that the district court erred by not placing the burden on plaintiffs to prove that the alleged misrepresentations "moved the market," i.e., had a measurable effect on the stock price. In short, defendants argue that the concept of "materiality" in <u>Basic</u>, which plaintiffs must demonstrate for the fraud-on-the-market presumption to apply, refers to a "material affect on the market price." This is a misreading of <u>Basic</u>.

<u>Basic</u> was a two-part opinion. In the first part of the opinion, the <u>Basic</u> Court undertook

---

[6] Indeed, in the first part of the opinion, the <u>Basic</u> Court specifically disavowed the use of multiple definitions of "materiality" that would vary according to who made the misrepresentation. <u>See</u> 485 U.S. at 240 n.18 ("Devising two different standards of materiality, one for situations where insiders have traded in abrogation of their duty to disclose or abstain (or for that matter when any disclosure duty has been breached), and another covering affirmative misrepresentations by those under no duty to disclose (but under the ever-present duty not to mislead), would effectively collapse the materiality requirement into the analysis of defendant's disclosure duties.").

to explain the meaning of "material" in Rule 10b-5.[7]  The <u>Basic</u> Court "expressly adopt[ed] the <u>TSC Industries</u> standard of materiality for the § 10(b) and Rule 10b-5 context" that "'to fulfill the materiality requirement 'there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.'"  <u>Basic</u>, 485 U.S. at 231-32 (quoting <u>TSC Indus. Inc., v. Northway, Inc.</u>, 426 U.S. 438, 449 (1976)).  <u>See also</u> <u>Halperin v. eBanker USA.com, Inc.</u>, 295 F.3d 352, 357 (2d Cir. 2002) ("The touchstone of the inquiry is . . . whether defendants' representations or omissions, considered together and in context, would affect the total mix of information and thereby mislead a reasonable investor regarding the nature of the securities offered.").  The Court underscored that "'[t]he determination of materiality requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those facts to [the shareholder].'"  <u>Basic</u>, 485 U.S. at 236 (quoting <u>TSC Indus.</u>, 426 U.S. at 450, alterations omitted).

Later in the opinion, the Court explained the advantage of framing the question of materiality in terms of how the information would be viewed by a reasonable investor, rather than in terms of actual impact on market price:

> Requiring a plaintiff to show a speculative state of facts, <u>i.e.</u>, how he would have acted if material information had been disclosed, or if the misrepresentation had not been made, would place an unnecessarily unrealistic evidentiary burden on the Rule 10b-5 plaintiff who has traded on an impersonal market.

<u>Id.</u> at 245 (citations omitted).

_____

[7]  Rule 10b-5 provides, in relevant part, that "[i]t shall be unlawful for any person . . . [t]o make any untrue statement of a <u>material</u> fact or to omit to state a <u>material</u> fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading . . . ."  17 C.F.R. § 240.10b-5 (emphases added).

In the second part of the opinion, the Basic Court drew on this fair and manageable definition of materiality to devise a method of establishing reliance on misrepresentations affecting the modern securities markets: if plaintiffs can show that the alleged misrepresentation was material and publicly transmitted into a well-developed market, then reliance will be presumed, for if a reasonable investor would think that the information would have "significantly altered the 'total mix' of information," id. at 232 (quoting TSC Indus., 426 U.S. at 449), then it may be presumed that, in an efficient market, investors would have taken the omitted information into account, thereby affecting market price, see id. at 244-45.

Although the Basic Court noted that empirical studies tended to confirm the premise that markets absorb material information, the Court emphasized that it was not "determin[ing] by adjudication what economists and social scientists have debated through the use of sophisticated statistical analysis and the application of economic theory." Id. at 246 n.24. Rather, it was drawing on "Congress' premise" that "the market price of shares traded on well-developed markets reflects . . . any material misrepresentations." Id. at 246. In a pivotal passage, the Court stated that the presumption was justified not by scientific certainty, but by considerations of fairness, probability, judicial economy, congressional policy, and common sense. Id. at 245-46.

This is how we explained the Basic presumption in our early cases interpreting that decision. See Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc., 967 F.2d 742, 748 (2d Cir. 1992) (noting that the presumption was appropriate in the fraud-on-the-market situation "due to the extreme difficulty in demonstrating transaction causation[, i.e., reliance]. To saddle a plaintiff with proving 'the generally indeterminable fact of what would have happened but for the omission [or the misrepresentations that skewed the market value of stock] would reduce the

15

protection against fraud afforded by Section 10(b).' The reliance presumption . . . reallocates the risks of mistaken adjudications, resolving questions of doubt in favor of the investors that section 10(b) seeks to protect." (quoting duPont v. Brady, 828 F.2d 75, 78 (2d Cir. 1987)).

Thus, plaintiffs do not bear the burden of showing an impact on price. The point of Basic is that an effect on market price is presumed based on the materiality of the information and a well-developed market's ability to readily incorporate that information into the price of securities. We said as much in Hevesi,

> The fraud-on-the-market doctrine, as described by the Supreme Court in Basic v. Levinson, creates a rebuttable presumption that (1) misrepresentations by an issuer affect the market price of securities traded in an open market, and (2) investors rely on the market price of securities as an accurate measure of their intrinsic value.

366 F.3d at 77 (emphasis added); see also Basic, 485 U.S. at 246 n.24 ("For purposes of accepting the presumption of reliance in this case, we need only believe that market professionals generally consider most publicly announced material statements about companies, thereby affecting stock market prices.").

Under Basic, as Judge Lynch held, the burden of showing that there was no price impact is properly placed on defendants at the rebuttal stage. Salomon Analyst II, 236 F.R.D. at 222 n.12. Basic made clear that defendants could "rebut proof of the elements giving rise to the presumption, or show that the misrepresentation in fact did not lead to a distortion of price . . . ." 485 U.S. at 248 (discussing the Eighth Circuit's decision below). "Any showing that severs the link between the alleged misrepresentation and . . . the price . . . will be sufficient to rebut the presumption of reliance." Id. (emphasis added); see Ceres Partners v. GEL Assocs., 918 F.2d 349, 360 (2d Cir. 1990) ("Basic . . . creates a rebuttable presumption of reliance and shifts to the defendant the burden of proof as to that element of the claim . . . .").

16

The structure of this analysis does not vary according to the identity of the speaker. Defendants worry that if no heightened test is applied in suits against non-issuers, any person who posts material misstatements about a company on the internet could end up a defendant in a Rule 10b-5 action. The worry is misplaced. The law guards against a flood of frivolous or vexatious lawsuits against third-party speakers because (1) plaintiffs must show the materiality of the misrepresentation,[8] (2) defendants are allowed to rebut the presumption, prior to class certification, by showing, for example, the absence of a price impact, and (3) statements that are "predictions or opinions," and which concern "uncertain future event[s]," such as most statements made by research analysts, are generally not actionable. See In re Int'l Bus. Machs. Corporate Sec. Litig., 163 F.3d 102, 107 (2d Cir. 1998).

Thus, no heightened test is needed in the case of research analysts.

## IV.  Remand

In his valiant effort to reconcile the conflicting messages from our Court on class certification standards, Judge Lynch concluded (1) that plaintiffs only need to make "some showing" beyond the allegations of the complaint of the elements triggering the Basic presumption, and (2) that he could not take and weigh evidence on whether the presumption can be rebutted, because to do so would require him to "weigh merits-related evidence, which the

---

[8] Although the structure of the materiality analysis remains the same no matter the identity of the speaker, the analysis of whether the specific misrepresentations made in a particular case are material "depends on the facts." Basic, 485 U.S. at 239. Thus, in a particular case, the identity of the speaker may be significant, because a court may determine that the reasonable investor would rely only on misrepresentations made by some speakers, but not by others. See e.g., Demarco v. Lehman Bros., Inc., 222 F.R.D. 243, 247 (S.D.N.Y. 2004) (Rakoff, J.) ("[N]o reasonable investor may suppose that any given analyst can guarantee future results . . . .").

17

Second Circuit prohibits this Court from doing at the class certification stage." Salomon Analyst II, 236 F.R.D. at 223 (citing Caridad, 191 F.3d at 293). In In re IPO, we (1) disavowed the "some showing" standard of Caridad and (2) "decline[d] to follow the dictum in Heerwagen suggesting that a district judge may not weigh conflicting evidence and determine the existence of a Rule 23 requirement just because that requirement is identical to an issue on the merits." 471 F.3d at 42. We "required definitive assessment of Rule 23 requirements," id. at 41 (emphasis added), and held that "all . . . evidence must be assessed as with any other threshold issue . . . ." id. at 27. Such an assessment can be made only if the judge resolves the "factual disputes relevant to each Rule 23 requirement" and "is persuaded to rule . . . that the requirement is met . . . ." Id. at 41. The question is whether Judge Lynch's now-incorrect statements of the applicable legal standards require reversal.

Notwithstanding the fact that Judge Lynch stated that he was applying the "some showing" standard with respect to his determinations of whether plaintiffs had established the elements triggering the Basic presumption, Judge Lynch ruled that plaintiffs had met a much higher burden. Judge Lynch held that "[t]here is, and can be, no dispute that Metromedia stock was actively traded on an open, developed, and generally efficient securities market," and that there could not be "any dispute that the alleged misrepresentations were publicly made." Salomon Analyst II, 236 F.R.D. at 222 (emphases added). These rulings have not been challenged on appeal.

Though Judge Lynch found the question of materiality to be "more complicated, " he determined that the alleged misrepresentations about the credit facility were material, because there was a "substantial likelihood" that this information "would have been viewed by the

18

reasonable investor as having significantly altered the total mix of information made available." Id. (quotation marks omitted). Judge Lynch further noted that "[d]efendants, in any event, make no serious argument that the alleged misrepresentations were immaterial" in the specified sense, and remarked that this was "understandable in light of evidence in the record that defendants themselves publicly emphasized the importance to Metromedia of the $350 million credit facility that is the subject of the alleged misrepresentations." Id. at 222-23. We do not find that this ruling was an abuse of discretion.

Judge Lynch correctly stated that even assuming plaintiffs had met their burden for invoking the fraud-on-the-market presumption, Basic allows defendants the opportunity to rebut that presumption. Id. at 223. However, relying on the now-overruled holding of our decision in Caridad, Judge Lynch held that he could not consider defendants' rebuttal argument prior to class certification. Salomon Analyst II, 236 F.R.D. at 221-23 (citing Caridad, 191 F.3d at 293). In re IPO now requires a district court to make a "definitive assessment" that the Rule 23(b)(3) predominance requirement has been met. This assessment cannot be made without determining whether defendants can successfully rebut the fraud-on-the-market presumption. The Basic Court explained that a successful rebuttal defeats certification by defeating the Rule 23(b)(3) predominance requirement. See Basic, 485 U.S. at 249 n.29. Hence, the court must permit defendants to present their rebuttal arguments "before certifying a class . . . ." In re IPO, 471 F.3d at 41; see also Oscar Private Equity Invs. v. Allegiance Telecom, Inc., 487 F.3d 261, 270 (5th Cir. 2007) ("The trial court erred in ruling that the class certification stage is not the proper time for defendants to rebut lead Plaintiffs' fraud-on-the-market presumption.").

This error might appear harmless, because, as Judge Lynch correctly noted, defendants

19

did not appear to have actually attempted a rebuttal: rather than submitting evidence to show that the misrepresentations did <u>not</u> affect market price, defendants simply argued that plaintiffs failed to carry their burden to establish market price impact. <u>Salomon Analyst II</u>, 236 F.R.D. at 223 n.12. However, defendants' error may have been the result of conflicting statements in our case law, for which they should not be penalized. Based on the state of the law at the time, defendants could not have been expected to have known at that stage of the proceedings that (1) they were entitled to a full rebuttal as a matter of law, and (2) even in a case involving research analysts, they bore the burden of showing that market price was not affected. Defendants now request the opportunity to attempt to rebut the fraud-on-the-market presumption by arguing, for example, that the market price was not affected by the alleged misstatements, other statements in the "sea of voices" of market commentary were responsible for price discrepancies, or particular plaintiffs may not have relied on market price.

We thus vacate the order certifying the class and remand to allow the district court to permit defendants the opportunity to rebut the <u>Basic</u> presumption prior to class certification.[9] If

---

[9] It should be noted that this approach is in part more, and in part less, restrictive than the approach Judge Rakoff proposed in <u>Lehman Brothers</u>. Judge Rakoff held that, in a suit against research analysts, the "plaintiff must adduce admissible evidence that . . . makes a <u>prima facie</u> showing that the analyst's statements alleged to be false or fraudulent <u>materially and measurably impacted the market price</u> of the security to which the statements relate." <u>Lehman Bros.</u>, 222 F.R.D. at 247 (emphasis added). By contrast, we hold that plaintiffs must show that the statement is material (a prima facie showing will not suffice). However, once that is done, the burden shifts to the defense to show that the allegedly false or misleading material statements did <u>not</u> measurably impact the market price of the security. Judge Rakoff, writing before our decision in <u>In re IPO</u>, appeared to allocate the burden in the way that he did because, citing <u>Caridad,</u> he was "acutely aware that under the view [then] prevailing in this Circuit, the Court may not consider on a class certification motion either the contrary evidence offered by defendants or the merits of the underlying claims." <u>Id.</u> Thus, under the prevailing law as he understood it, he had no choice but to require the <u>plaintiffs</u> to adduce evidence of a measurable impact on price. To allocate the burdens fairly, he required a minimal showing: the plaintiffs

20

defendants attempt to make a rebuttal, the district court will be "accorded considerable discretion to limit both discovery and the extent of the hearing on Rule 23 requirements" in order "[t]o avoid the risk that a Rule 23 hearing will extend into a protracted mini-trial of substantial portions of the underlying litigation . . . ." In re IPO, 471 F.3d at 41. "But even with some limits on discovery and the extent of the hearing, the district judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." Id.

**CONCLUSION**

For the foregoing reasons, we vacate the order of class certification and remand for further proceedings consistent with this opinion.

---

were only required to produce "admissible evidence" that made a "prima facie" showing of price effect. Id. With Caridad (so understood) overruled, the present approach becomes available, and it better accords with In re IPO and Basic.